UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
IN RE:

FRANKLIN INDUSTRIAL COMPLEX, INC.,

           Debtor.

Case No. 01-67459
Chapter 11 Case

---

IN RE:

CHRISTINE FALLS OF NEW YORK, INC.,

           Debtor.

Case No. 01-67458
Chapter 11 Case

---

IN RE:

TRAFALGAR POWER, INC.,

           Debtor.

Main Case No. 01-67457
Chapter 11 Case

Jointly Administered

---

# AMENDED PLAN OF REORGANIZATION
# OF TRAFALGAR POWER, INC.

HARRIS BEACH PLLC
Attorneys for Debtors
One Park Place, Fourth Floor
300 South State Street
Syracuse, NY   13202
Telephone:  (315) 423-7100

Harris Beach PLLC, attorneys for Trafalgar Power, Inc. ("Trafalgar"), proposes

the following Amended Plan of Reorganization (" The Plan").

## ARTICLE I
## DEFINITIONS

The following terms, when used in this Plan, shall, unless the context requires otherwise,

have the following meanings:

1.1:   ADMINISTRATIVE EXPENSE:

The term "Administrative Expense" shall mean those claims as defined under §503 of the

Code which are allowed, approved and ordered to be paid by the Court.

1.2:   ALLOWED CLAIM:

The term "Allowed Claim" shall mean:

(a)    The amount of a Claim that is listed by the Debtor in its Schedule of

Assets and Liabilities as filed with the Court, as Amended from time to time, on or before the

Effective Date and which is not listed as disputed, contingent or unliquidated, or is not otherwise

disputed;

(b)    The amount of a Claim for which a Proof of Claim was filed prior to the

bar date;

(i)    To which no objection has been interposed in any period of

limitation fixed by the Code or applicable Bankruptcy Rules or Orders of the Court; or

(ii)    To which an objection has been interposed to the extent as

established by a Final Order of the Court; or

(iii)    Administrative Claims, the amount of which have been fixed by a

Final Order of the Court.

2

1.3:   CASE:

The term "Case" shall mean the Chapter 11 proceeding of Trafalgar Power, Inc., Chapter 11 Jointly Administered Case, pending under Case No. 01-67457 (Main Case No. 01-67451) before the United States Bankruptcy Court for the Northern District of New York, Utica Division.

1.4:   CLAIM:

The term "Claim" shall be defined under §101(4) of the Code and shall include:

(a)     A right to payment, whether or not such right is reduced to Judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, and unsecured; or

(b)     The right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, and unsecured.

1.5:   CLASS:

The term "Class" shall mean any class to which allowed Claims are classified pursuant to Article II.

1.6:   CODE:

The term "Code" shall mean Title 11 of the United States Code which sets forth the Bankruptcy Reform Act of 1978, as it was in effect on the petition date as amended by amendments applicable to this Case.

3

1.7:   CONFIRMATION DATE:

The term "Confirmation Date" shall mean the date on which a Final Order of the Court confirming the Plan is entered.

1.8:   CONFIRMATION OF THE PLAN:

The term "Confirmation of the Plan" shall mean the entry of Final Order confirming the Plan.

1.9:   COURT:

The term "Court" shall mean the United States Bankruptcy Court for the Northern District of New York.

1.10:   CREDITORS:

The term "Creditors" shall mean all creditors of the Debtor holding claims for debts, liabilities, demands or Claims of any character whatsoever.

1.11:   DEBTOR:

The term "Debtor" shall mean Trafalgar Power, Inc.

1.12:   EFFECTIVE DATE:

The term "Effective Date" shall mean thirty (30) days after Confirmation of the Plan.

1.13:   FINAL ORDER:

The term "Final Order" shall mean an Order of the Court which shall not have been reversed, stayed, modified, or amended and concerning which the time to appeal or to seek a review or other hearing shall have expired and which is otherwise final in all respects.

1.14:    IMPAIRED CLASS:

The term 'Impaired Class" shall mean those claims or interests which are deemed impaired pursuant to §1124 of the Code.

1.15:    PRIORITY CREDITOR:

The term "Priority Creditor" shall mean creditors with Claims entitled to a priority pursuant to §507 of the Code.

1.16:    SECURED CREDITOR:

The term "Secured Creditor" shall mean all Creditors whose Claims are secured by a lien, security interest, or other possessory interest which has been properly perfected as required by applicable law with respect to property owned by the Debtor.

1.17:    THE PLAN:

The term "Plan" shall mean this Plan of Reorganization in its present form and as it may be amended or supplemented in accordance with the Code.

## ARTICLE II
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

For purposes of this Plan, the Claims, interests of Creditors of Debtor are divided into the following Classes:

2.1:    CLASS I:  ADMINISTRATIVE CLAIMS

The allowed amounts of administrative expenses and priority obligations which qualify in accordance with §503 of the Code.  These claims include the administrative claims of Harris Beach PLLC, counsel for the Debtor; the Court appointed accountant, J.D. Cox & Associates, Inc.; the Court appointed project supervisor, Mercer Construction Company LLC; the Court appointed forensic accountants, the Bonadio Group; and the United States Trustee's claims.  The

administrative expenses also include post-petition taxes owed to the New York State Department of Taxation and Finance.

2.2:    CLASS II: SECURED CLAIMS

The allowed non-recourse secured claim of the "B" Note Holder which is (a) Algonquin and related entities, or (b) Trafalgar, which is secured by a mortgage and security agreement on Trafalgar's six (6) hydro-electric plants located in New York, located at or known as Cranberry Lake, Herkimer, Ogdensburg, Forestport, Adams, and Kayuta Lake.  This claim is also secured by the plant owned by Christine Falls of New York, Inc.  Trafalgar's portion of this debt is 88.56% and Christine Falls' portion is 11.44%.

The actual owner of the "B" Note will be determined in the Algonquin District Court litigation outlined in the Disclosure Statement.  This claim, which Algonquin alleges has an approximate balance of $22.8 Million, will be reinstated in accordance with Section 1124(2). Algonquin alleges a reinstatement figure of $8.5 Million, which the Debtor disputes.  Debtor will be filing an objection to the claim including the reinstatement amounts owed, to have the amount of the claim and the reinstatement amounts determined by the Court.

Payment will be made to reinstate thirty (30) days after the last to occur of (a) final determination of the reinstatement amount by the Court; (b) release of the Tort Proceedings Escrow (minus the $2.75 Million); (c) the effective date of the Plan; and (d) a final determination of the District Court is made.  In the event that the reinstatement amount exceeds the funds available in the JPMorgan Chase account, Debtor will elect to sell the property or encroach upon the $7 Million Tort Proceedings Escrow once it is released.  If reinstatement is effectuated, the funds will be held in escrow on behalf of the "B" Note Holder until the District Court litigation is resolved and the true owner of the "B" Note is determined.  All future monthly payments on the

claim will be paid in accordance with the underlying loan documents from ongoing operations and will be held in escrow as well.

2.3:    CLASS III:  UNSECURED PRIORITY CLAIMS

The allowed priority claimants who would have filed Proofs of Claim or who appeared in the original schedules as undisputed and uncontingent shall be paid in full with 6% interest calculated from the effective date of the Plan throughout the duration of the Chapter 11 Plan of Reorganization.   These claims are outlined in Exhibit "A" attached hereto.   The estimated amount of the priority claims are $215,590.24.   This class includes the claims of the Internal Revenue Service ($24,166.54) and the New York State Department of Taxation and Finance (two claims totaling $191,423.70).   They shall be paid in monthly payments of $8,484.02 over 24 months.

The Debtor does not believe there are any amounts owed to the real property taxing authorities, and that any amounts owed pre-petition were paid in the ordinary course of business. Therefore there will not be payments made to:  Adams Center Tax Collector, Boonville Tax Collector, City of Ogdensburg, Village of Herkimer, and Oswegatchie Reservoir.

2.4:    CLASS IV:  GENERAL UNSECURED CLAIMS:

The general unsecured claimants that have filed allowed Proofs of Claim or who have appeared in the original schedules as undisputed and uncontingent claims shall be paid a 100% dividend with 4% interest calculated from the effective date of the Plan.  The following is the list of the only unsecured claimants that will be paid:  Jonathan Chait, CT Corp., State Street Bank and Sears Roebuck and Co.  Total unsecured claims are $28,429.22.

It is anticipated that all payments made under the terms of the Plan be made over the 24 month term of the plan in monthly payments of $1,234.12.

The following insider claims will not receive a distribution under the Plan but they will

be equitably subordinated:

| | |
|---|---|
| Ridgewood Heights | $11,914,960.09 |
| Stever Properties | $15,199.55 |
| Trafalgar Properties | $35,000.00 |

These claimants will not receive a distribution on account of their claims during the

pendency of the Plan, but will not be deemed discharged upon confirmation of the Plan.

A potential unsecured claim of an insider, Pine Run, will be accorded the same treatment

as the insider claims identified above.

2.5:    CLASS V: EQUITY SECURITY HOLDERS

The claim of the sole shareholder, Marina Development, Inc., shall not be paid under the

terms of the Plan. Marina will not need to infuse any funds into Trafalgar upon confirmation of

the Plan as all creditors will be paid 100% of their claims with interest. Once all payments are

made and the Plan is successfully completed, the stock will vest with Marina, which will retain

its 100% equity ownership in Trafalgar.

**ARTICLE III**
**STATEMENT OF CLASSES**
**IMPAIRED AND NOT IMPAIRED**

3.1:    Classes I, II, III and V are not impaired by the provisions of this Plan and are, therefore,

not entitled to vote on the Plan.

3.2:    Classes IV is impaired under the terms and provisions of this Plan and, therefore is

entitled to vote on the Plan.

## ARTICLE IV
## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

4.1    As of August 23, 2005, there is approximately $1 Million accumulated in the Debtors'

JPMorgan Chase checking account (under the control of the Algonquin management company).

The Plan calls for an initial payment to reinstate the secured claim to the "B" Note Holder under

§1124(2).  The amount of this payment will be determined by the Court.  This payment will be

paid out of the cash accumulated in the JP Morgan Chase account and any additional funds that

have accumulated until the time of confirmation.   In the event the reinstatement amount is

greater than the funds available, Debtor will elect to sell the property or encroach upon the $7

Million escrowed funds once they are released.

4.2    The Plan also calls for payments to Harris Beach PLLC, counsel for the Debtor, J.D. Cox

& Associates, accountant, and the Bonadio Group, for forensic accountant professional fees and

costs after proper application and approval by the Bankruptcy Court.  These lump sum payments,

anticipated to be approximately $300,000 in total, will be paid out of the Debtors' JPMorgan

Chase checking account or from escrowed funds.

4.3    The Internal Revenue Service and New York State will also be paid on their

administrative claims, if any, at the time of confirmation.  Debtor believes it owes approximately

$218,323 to the New York State for 2001 through 2004 taxes and that nothing is owed to the

Internal Revenue Service for post-petition taxes.  The New York State amounts will also be paid

out of the $1 Million in the Debtor's JPMorgan Chase bank account.

4.4    The payments under the terms of the Plan are as follows:  (A) Secured Creditor, after the

initial reinstatement, shall be paid in monthly payments in accordance with its underlying loan

9

document; Priority Claims of $8,484.02 per month over 24 months, and Unsecured Creditor Payments of $1,234.12 per month over 24 months. The priority and unsecured creditors and the balance of the monthly payments to the "B" Note Holder after reinstatement will be generated from ongoing business operations of the Debtor. A copy of the Debtor's cash flow projections are attached hereto as Exhibit "A". These projections demonstrate that the cash flows over the next two years will be sufficient to make the plan payments outlined above.

**ARTICLE V**
**EXECUTORY CONTRACTS/UNEXPIRED LEASES**

5.1     Annexed hereto as Exhibit "B" is a list of executory contracts and unexpired leases that exist as of the date of the Disclosure Statement, and the Debtors' intention regarding those contracts. Debtor intends to assume the leases with Oswegatchie River, Cranberry Reservoir and the City of Ogdensburg, and upon information and belief, is current with those leases. If there are any arrears due, they shall be paid upon confirmation from the accumulated funds in the JP Morgan Chase account. Debtor intends to assume the executory contracts with Niagara Mohawk (if any).

The Debtor also intends to reject the management agreement dated January 15, 1996 with Algonquin Power Corp., Inc., based on its best business judgment.

The Debtor verily denies that any contract or other agreement exists with Hydro Investors, Inc. based on the prior Court proceedings outlined above and the numerous rejections of their claims. Nevertheless, HII continues to assert, in serial fashion, an interest in the projects owned by Trafalgar and Christine Falls. In the unlikely event that any subsequent proceedings determine that there exists such a claim, the Debtor hereby rejects the underlying contract(s) and agreement(s) in their entirety.

5.2     The holder of claims resulting from rejection of Executory Contracts or unexpired leases, if any, shall be required to file Proofs of Claim relating to the damages there from no later than sixty (60) days after the effective date of the Plan.  The Debtor may file objections to said claims no later than one hundred twenty (120) days after the effective date.

**ARTICLE VI**
**MODIFICATION OF THE PLAN**

6.1:     The Debtor may propose amendments or modifications of the Plan at any time prior to confirmation, with leave of the Court upon such notice as is required by the Court.   After Confirmation, the Debtor may, upon approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission or reconcile inconsistencies in the Plan, or in the Order of Confirmation, in such manner as may be necessary to carry out the provisions and effect the purposes of the Plan.

**ARTICLE VII**
**JURISDICTION OF THE COURT**

The Court will retain jurisdiction until this Plan has been fully consummated, including, but not limited to the following purposes:

7.1     The classification of the Claim of any Creditor and the re examination of Claims which have been allowed for purposes of voting and the determination of such objections as may be filed to the Creditors' claims.

The failure by the Debtor to object to, or to examine any claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or to re examine the Claim in whole or in part.

7.2     Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject

11

to an action pending as of the date of confirmation between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Code.

7.3    The correction of any defect, the cure of any omission or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan.

7.4    The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Code.

7.5    To enforce and interpret the terms and conditions of this Plan.

7.6    Entry of any Order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

7.7    Entry of an Order concluding and terminating this case.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.1    DISCHARGE OF ALL CLAIMS AND EQUITY INTERESTS:

The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever, including any interest accrued thereon, from and after the petition date, against the Debtor, or any of its assets or properties except as otherwise provided herein.

8.2    VESTING OF PROPERTY:

Except as otherwise provided in the Plan, upon the confirmation date, title to all assets and properties dealt with by the Plan shall pass to the Debtor, free and clear of all claims, and the

Confirmation Order shall be a judicial determination of discharge of all of the Debtor's liabilities, except as provided in the Plan.

8.3    POST CONFIRMATION DEFAULT:

Upon any default by the Debtor agent of any payments as set forth herein, any creditor shall notify Debtor and Debtor's attorney or escrow agent in writing at the addresses set forth below and allow Debtor or escrow agent a fifteen (15) day cure period to cure the default. If the default remains after the 15 day period, creditor may enforce its rights accordingly.

Notice shall be sent to:          Wendy A. Kinsella, Esq.
                                  Harris Beach, PLLC
                                  One Park Place, 4th Floor
                                  300 South State Street
                                  Syracuse, NY   13202

                                  And to the debtor at:

                                  Trafalgar Power, Inc.
                                  c/o Annette Aldridge, Vice President
                                  SNR Management Corporation
                                  166 Hein Drive
                                  Garner, NC   27529

8.4    AVOIDANCE POWERS:

The Debtor shall review its records to determine if there is any legal basis and a necessity for exercising any of its avoidance powers under the Code. The Debtor hereby reserves its right to commence an adversary proceeding necessary to exercise any of its rights under the Code after confirmation. Debtor specifically reserves all rights to assert any claims against Algonquin and related entities.

13

8.5    PAYMENT DATES:

Whenever any payment or distribution to be made under this Plan shall be due on a day

other than a business day, such payment or distribution shall instead be made, without interest,

on the immediately following business day.

8.6    HEADING:

The headings used in this Plan are inserted for convenience only and neither constitute a

portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

8.7    SEVERABILITY:

Should any provisions in this Plan be determined to be unenforceable following the

confirmation date, such determination shall in no way limit or affect the enforceability and

operation of any other provision of this Plan.

8.8    GOVERNING LAW:

Except to the extent that the Code or other Federal Law is applicable, the rights, duties

and obligations arising under this Plan shall be governed by, and construed and enforced in

accordance with the Laws of the State of New York.

8.9    SUCCESSORS AND ASSIGNS:

The rights, duties and obligations of any person or entity named or referred to in this Plan

shall be binding upon, and it shall inure to the benefit of the successors and assigns of such

person or entity.

8.10    U.S. TRUSTEE'S FEES:

Upon the effective date, the Debtor shall pay all unpaid U.S. Trustee's fees, if any, and

agrees to provide the U.S. Trustee any information regarding cash disbursements which the U.S.

Trustee may need to confirm that all quarterly payments required to be paid under 28 U.S.C.

§1930, have, in fact, been paid. Debtor shall continue to pay U.S. Trustee's fee that become due

pursuant to 28 USC Section 1930 until closure of the case.

Dated: January 5, 2006

Wendy A. Kinsella
HARRIS BEACH PLLC
Wendy A. Kinsella, Esq.
One Park Place
300 S. State Street
Syracuse, New York   13202
Telephone:  (315) 423-7100

TRAFALGAR POWER, INC.

By:  Arthur Steckler