UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: <br><br> FRANKLIN INDUSTRIAL COMPLEX, INC., <br><br> Debtor. | Case No. 01-67459 <br> Chapter 11 Case |
| IN RE: <br><br> CHRISTINE FALLS OF NEW YORK, INC., <br><br> Debtor. | Case No. 01-67458 <br> Chapter 11 Case |
| IN RE: <br><br> TRAFALGAR POWER, INC., <br><br> Debtor. | Main Case No. 01-67457 <br> Chapter 11 Case <br><br> Jointly Administered |

**AMENDED DISCLOSURE STATEMENT OF
FRANKLIN INDUSTRIAL COMPLEX, INC.**

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR
REJECTION OF THE PLAN OF REORGANIZATION.
ACCEPTANCE OR REJECTION MAY NOT BE
SOLICITED UNTIL A DISCLOSURE STATEMENT
HAS BEEN APPROVED BY THE BANKRUPTCY COURT.
THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR
APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE COURT.

COURT APPROVAL OF THIS DISCLOSURE STATEMENT
DOES NOT CONSTITUTE A RECOMMENDATION AS
TO THE MERITS OF THE CHAPTER 11 PLAN.

Dated: January 5, 2006

*Wendy A. Kinsella*
Wendy A. Kinsella, Esq. (Bar Roll No. 508699)
HARRIS BEACH PLLC
One Park Place, Fourth Floor
300 South State Street
Syracuse, NY  13202
Telephone:  (315) 423-7100

# I. INTRODUCTION

Marina Development, Inc. ("Marina"), Franklin Industrial Complex, Inc. ("Franklin"), Christine Falls of New York, Inc. ("Christine Falls"), Trafalgar Power, Inc. ("Trafalgar"), and Pine Run of Virginia, Inc. ("Pine Run") (collectively the "Debtors"), commenced their cases by filing Voluntary Chapter 11 Bankruptcy Petitions on August 27, 2001 with the United States Bankruptcy Court for the Eastern District of North Carolina ("North Carolina Bankruptcy Court"). On December 26, 2001, these cases were transferred to the United States Bankruptcy Court for the Northern District of New York ("Court").

With respect to the Franklin case, Algonquin Power Fund (Canada), Inc. ("APF") obtained relief from the automatic stay to proceed with its New Hampshire state court ("State Court") rights and remedies against Franklin's assets. In furtherance of its rights, APF conducted a foreclosure sale at which it bid in a portion of its claim, and Franklin Power, LLC, its affiliate, acquired title to Franklin's New Hampshire hydroelectric facilities ("Facilities"). Accordingly, Franklin has ceased all business affairs and is no longer conducting business.

Franklin has prepared an Amended Plan of Reorganization ("Plan") and the within Amended Disclosure Statement ("Disclosure Statement"), in accordance with Bankruptcy Rules 3016 and 3018, etc. Christine Falls and Trafalgar are also separately proposing a Plan of Reorganization and Disclosure Statement. Marina and Pine Run each filed motions to sever and dismiss their bankruptcy cases. By Order dated November 29, 2005, the Court dismissed Pine Run's bankruptcy. By Order dated December 22, 2005, the Court dismissed Marina's bankruptcy case.

The purpose of the Disclosure Statement is to give holders of claims and interests sufficient information to permit them to cast an informed vote to accept or reject the Plan.

Franklin believes that acceptance of the Plan is in the best interest of each class of creditors and interest holders and recommends that each creditor and interest holder vote to accept the Plan.

The Court will set a date and time for a hearing on the acceptance of the Plan. Creditors may vote for or against the Plan by filling out and mailing an Acceptance Form ("Ballot") to the entity designated by the Court, within the time period fixed by the Court for receipt of Ballots.

The vote for each creditor entitled to vote is important. The Plan will be accepted if it is approved by each class of those voting creditors who hold at least 2/3 in dollar amounts and comprise ½ in number of the voting claims of the class in question.

## II.    DISCLAIMER

COPIES OF THE PLAN WILL BE SENT WITH THIS DISCLOSURE STATEMENT TO EACH CREDITOR OR INTEREST HOLDER ENTITLED TO VOTE ON THE PLAN. THE DEFINITIONS CONTAINED IN THE PLAN APPLY TO THIS DISCLOSURE STATEMENT AND EACH RECIPIENT OF THIS DISCLOSURE STATEMENT IS URGED TO REVIEW THE PROVISIONS OF THE PLAN WITH CARE.

NO REPRESENTATIONS CONCERNING THE DEBTOR'S FINANCIAL CONDITION, THE PLAN OR THE VALUE OF THE DEBTOR'S ASSETS ARE AUTHORIZED BY THE DEBTOR OTHER THAN SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN, WHICH ARE OTHERWISE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY ANY CLAIMANT OR INTEREST HOLDER IN REACHING A DECISION. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL

FOR THE DEBTOR WHO SHALL, IN TURN, DELIVER SUCH INFORMATION TO THE COURT WHICH SHALL THEN ACT APPROPRIATELY.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT OR TO ANY OTHER ACCOUNTING REVIEW. DUE TO THE ACCOUNTING COMPLEXITIES INHERENT IN ANY CHAPTER 11 CASE, THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, AND THE STATE OF THE DEBTOR'S FINANCIAL, LEGAL AND ACCOUNTING RECORDS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT AN INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. DISTRIBUTION PROJECTIONS HAVE BEEN MADE SOLELY UPON THE EXPECTATIONS OF THE DEBTOR WITH RESPECT TO FUTURE REVENUES AND OPERATION EXPENSES, AS WELL AS THE ALLOWANCE OF VARIOUS CLAIMS.

CREDITORS ARE URGED TO READ ALL OF THE MATERIAL ENCLOSED AND THEN TO CONSULT WITH THEIR PROFESSIONAL ADVISORS OR OTHERS WHOM THEY DEEM HELPFUL BEFORE REACHING THEIR DECISION ABOUT THE PLAN.

### III.    HISTORY OF FRANKLIN AND EVENTS LEADING TO FILING

In 1991, Franklin, a wholly-owned subsidiary of Marina, owned a hydroelectric power plant located on the Winnipesaukee River in Franklin, New Hampshire, (the "Facilities"). Franklin sold electric power generated by the Facilities to Public Service of New Hampshire.

In June, 1991, Franklin and Confederation Leasing Limited ("CLL") entered into a note purchase agreement (the "Note Purchase Agreement") that provided for CLL to make a loan (the "Loan") to Franklin evidenced by a promissory note from Franklin for $6.2 Million and for CLL

4

to receive certain security interests in property of Franklin, Marina, and Arthur Steckler ("Steckler"). In order to evidence the Loan, Franklin, Marina, Steckler and CLL executed a number of other documents (collectively, the "Security Documents"). The Security Documents include:

   a.  An 11.05% Senior Secured Note by Franklin to CLL, due January 1, 2006, in the original principal amount of $6,200,000 (the "Note"), which was issued pursuant to and subject to the terms of the Note Purchase Agreement entered into on or about June 14, 1991.

   b.  Assignment of Interconnection Agreement between Franklin and CLL.

   c.  Guaranty by Marina of Franklin's obligations under the Note Purchase Agreement, secured by a pledge of all of Marina's shares of the capital stock of Franklin ("Marina Guaranty").

   d.  Guaranty by Steckler of Franklin's obligations under the Note Purchase Agreement, secured by a pledge of all of his shares of the capital stock of Steckmar National Realty & Investment Corporation Ltd. ("Steckler Guaranty").

Subsequently, CLL's parent company went into receivership, and Newcourt Credit Group Inc. ("Newcourt") and Canadian Income Partners I, Limited Partnership ("CIP I") asserted rights as holders of the Note and assignees of the Note Purchase Agreement and the Security Documents executed simultaneously with the Note.

After Franklin began to experience difficulty making regular payments under the Note, Newcourt furnished Franklin with notice of default on October 13, 1994. Following the default notice, Franklin and Newcourt negotiated a workout plan. Under the plan, Algonquin Power Corporation, Inc., an outside management firm, took over financial and technical management of the Facilities, including servicing the Loan, in June 1995. Pursuant to a management agreement between Algonquin Power Corporation, Inc. and Franklin dated June 29, 1995 ("Management Agreement"), Algonquin was to be paid a monthly management fee of $2,500. Algonquin

5

Power Corporation, Inc. conducted its management and operational activities through, or delegated some or all of its management and operational activities to Algonquin Power Systems, Inc. and Algonquin Power Systems (New Hampshire), Inc. These three entities are hereinafter collectively referred to as "Algonquin."

In or about January, 1999, Algonquin entered into private negotiations with KPMG, the receiver of CLL's parent company, to purchase the Note from the receiver. Coincidentally, KPMG happened to be the chartered accountants of Algonquin. No communication of these negotiations was ever communicated to Franklin by Algonquin, its agent.

On or about June 28, 1999, Algonquin, APF[1] and Algonquin Power Income Fund ("APIF") entered into an agreement with Newcourt and CIP I to purchase the Note from Newcourt and CIP I, and to assign all rights in the Security Documents to APF and APIF. In September, 1999, APF informed Franklin that an outstanding balance of $5.7 Million was due and that if the debt were not paid in full within five business days, then it intended to exercise its rights to approximately $5.7 Million of Franklin, Marina and Steckler's assets securing the Note.

Franklin, Marina, and Steckler brought a declaratory judgment action in State Court (No. 99-E-383) against Algonquin and APF, alleging, *inter alia*, that the defendants mismanaged the Facilities, appropriated or diverted a business opportunity, and that Franklin was damaged as a result. APF, APIF, and Algonquin brought a separate declaratory judgment action in State Court (No. 99-E-386) against Franklin, Marina, and Steckler under the Note, Marina Guaranty and Steckler Guaranty to recover the debt and exercise its alleged rights over the assets of Marina and Steckler which secured the Note. The State Court consolidated both matters. A copy of

---

[1] APF is a wholly-owned subsidiary of Algonquin Power Income Fund, a publicly-owned trust established under the laws of the province of Ontario, the units of which are traded on the Toronto Stock Exchange.

6

APF's Petition for Declaratory Judgment and Other Relief, filed with State Court, is attached hereto as Exhibit "A."

On or about August 27, 2001, Franklin commenced this case by filing a Voluntary Chapter 11 Bankruptcy Petition with the North Carolina Bankruptcy Court. On or about September 26, 2001, APF moved to lift the automatic stay to pursue its claim against Franklin in the State Court. By Order dated November 7, 2001, the North Carolina Bankruptcy Court granted APF's lift stay motion. APF then conducted a foreclosure sale at which it bid in a portion of its claim, and thereby caused Franklin Power LLC, its affiliate, to acquire title to the Facilities. Accordingly, the Debtor has ceased all business affairs and is no longer conducting business. On December 26, 2001, this case was transferred to this Court.

After the foreclosure sale, the litigation continued with respect to APF collecting the deficiency balance due under the Marina Guaranty and Steckler Guaranty.

The case went through an eight (8) day trial in June 2004, at which point all parties agreed to settle. On or about June 30, 2004, Franklin, Marina, Trafalgar, Steckler, Algonquin, APF and others entered into a Settlement Agreement and Order ("Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as Exhibit "B." In sum, the Settlement Agreement provides that Franklin and Steckler will pay the sum of $2,750,000 to APF from Trafalgar's escrow funds ("Escrow Funds")[2] in satisfaction of the claims asserted by APF in Civil Action 99-E-0386. That sum will be paid to APF from the Escrow Funds at the conclusion

---

[2] In 1999, Trafalgar obtained a $7.6 million tort judgment in a professional malpractice action against the engineers and architects of certain hydroelectric power plants located in New York. That judgment was appealed to the Second Circuit, which affirmed the judgment and increased the damages award. See, Trafalgar Power, Inc. v. Neal Dunlevy & Stetson-Harza Corp., 227 F.3d 8 (2d Cir. 2000). The parties ultimately stipulated to a judgment in the amount of approximately $11 million. In late 1999, Trafalgar assigned its judgment to Pine Run, which was thereafter reassigned back to Trafalgar in late 2001. These funds constitute the Escrow Funds pursuant to Court Order and stipulations between the parties.

7

of the litigation pending in the United States District Court and the United States Bankruptcy Court for the Northern District of New York (the "New York Litigation").

The Settlement Agreement also provides, at paragraph 5:

> In the event the Bankruptcy Court approves the terms of the Settlement Agreement, <u>all of the claims and counterclaims of all parties in Civil Action 99-E-0383 and in Civil Action 99-E-0386 shall be dismissed with prejudice</u>, and each party shall be responsible for its own attorneys' fees and costs.

Exh. "B" (Emphasis added).

On July 1, 2004, the presiding Merrimack Superior Court justice "So Ordered" the Settlement Agreement. <u>See</u>, Exh. "B." Thereafter, on December 10, 2004, Honorable Stephen D. Gerling entered an Order approving the Settlement Agreement. A copy of the December 10, 2004 Order is attached hereto as Exhibit "C."

### IV. MANAGEMENT SALARY

The Debtor has not made any post-Chapter 11 filing payments to any management, since Algonquin had operational and management control of the Facilities pre and post bankruptcy filing until the Facilities were sold at foreclosure.

### V. CHAPTER 11 PROCEEDING

As previously stated, a voluntary Chapter 11 petition was filed on August 27, 2001. At filing, Algonquin maintained total control of the Facilities. Subsequent thereto, APF obtained relief from the automatic stay and sold the Facilities at a foreclosure sale. Since that sale, with the exception of the Settlement Agreement, there has not been any significant activity in this bankruptcy case.

### VI. DEBTOR'S FINANCIAL CONDITION

Since Franklin has not continued in operation, there is no cash flow to pay creditors. The only source of funds is the cash infusion from the sole equity holder, Marina.

## VII.    LIQUIDATION ANALYSIS

Franklin believes that creditors would receive a 100% distribution in the event of a liquidation. The liquidation analysis follows: Assets- Note due from Marina $2.4 million; Liabilities- New Hampshire receives $24,274, general unsecured creditors receive $9,000, and insider claims receive $79,652. Also, as set forth above, APF will be paid $2,750,000 from the Trafalgar Escrow Funds pursuant to the Settlement Agreement in full settlement of its claims against Franklin.

## VIII.    SUMMARY OF THE PLAN

Although a full copy of the Plan is transmitted with this Disclosure Statement, a brief description of the Plan, classification and proposed treatment follows:

**Classifications:**

A.    **Class I – Allowed Administrative Expenses:**

The allowed amounts of Administrative Expenses and Priority Obligations which qualify in accordance with §503 of the Code. These claims include the administrative claims of Harris Beach PLLC, attorneys for the Debtor; J.D. Cox and Associates, Court appointed accountants; and the United States Trustee's fees. These fees shall be paid in full at confirmation, out of the Escrow Funds.

B.    **Class II – Secured Claims:**

The Secured Claim of APF. Since APF foreclosed on its collateral and settled the deficiency claim as outlined above, there is no remaining secured or deficiency claim. APF will be paid $2,750,000 from the Escrow Funds at the conclusion of the New York Litigation in accordance with the Settlement Agreement.

9

C.  **Class III – Unsecured Priority Claims:**

The Unsecured Priority Claims of the taxing authority which includes only the New Hampshire Department of Revenue which is owed $24,273.61 according to its Proof of Claim. This claim will be paid in a lump sum upon the effective date of the Plan from a cash infusion from Marina.

The other municipalities and taxing authority claimants will not receive any distribution under the Plan. These obligations were related to the Facilities and were therefore secured by the real property. The claimants which will not be paid are the City of Franklin, New Hampshire, the New Hampshire Water Resources, and the Public Service of New Hampshire.

D.  **Class IV – General Unsecured Claims:**

There is one general unsecured claimant who has filed an allowed Proof of Claim or who appeared in the original schedules with a known amount due and was listed as undisputed and uncontingent. This claimant, Jonathan Chait, is the only claimant who will be paid 100% of his claim of $9,000. TAPR III Ltd. Partnership filed a late Proof of Claim which will be expunged.

The other insider claimants which shall not be paid, but whose claims shall be equitably subordinated, are as follows: Stever Properties LLC; Trafalgar Power Inc.; and Trafalgar Properties LLC. These claims will not receive a distribution on account of their claims during the pendency of the Plan but will not be deemed discharged upon confirmation.

E.  **Class V – Equity Security Holders:**

The claim of the sole shareholder of the corporation. Marina will not receive any distribution under the Plan and will provide a cash infusion upon confirmation to pay the above

claimants, thereby retaining its stock. This funding will be a reduction in the note due from Marina.

**F.     Claims Against Algonquin:**

With the exception of those particular claims that have been settled with Algonquin and APF in the New Hampshire litigation, the Plan does not, in any manner, impair or waive any claims, rights and/or causes of action that Franklin may have, now or in the future, against Algonquin, APF, and APIF.

### IX.    CASH REQUIRED FOR DISTRIBUTION

The Plan provides for lump sum payments to be made within 30 days from the effective date of the Plan. These payments total $33,273.61, which includes $24,273.61 priority claims and $9,000 to the general unsecured class.

### X.     PREFERENCE PAYMENTS – FRAUDULENT TRANSFER ANALYSIS

It is the understanding of Franklin that it made no out of the ordinary course of business payments, whether they be alleged preferences or alleged fraudulent transfers, and therefore there is not any recovery anticipated.

### XI.    EXECUTORY CONTRACTS – UNEXPIRED LEASES

All Executory Contracts/Unexpired Leases in existence are rejected by Franklin. These include the agreements with Algonquin Power Company, Power Service of New Hampshire, City of Franklin, New Hampshire, and State of New Hampshire Water Resources. With the exception of the claims that are barred by the Settlement Agreement, claims for lease rejection damages shall be forever barred unless a Proof of Claim is filed with this Court and served upon counsel for Franklin within 30 days after service of the Notice of Confirmation Order. Algonquin's rejection claims, if any, are incorporated into the Settlement Agreement.

## XII. ELEMENTS OF CONFIRMATION PURSUANT TO 11 U.S.C. §1129(A)

It is Franklin's belief that all of the requirements for confirmation of the Plan as provided for in §1129(a) of the Code, either have been or will be met prior to a hearing and confirmation of the Plan. Such requirements have been met or will be met as follows:

**Section 1129(a)(1):**

Franklin has been advised by its counsel that the proposed Plan complies with the applicable provisions of Chapter 11.

**Section 1129(a)(2):**

Franklin as proponent of the Plan, has complied with all applicable provisions of Chapter 11 in proposing the Plan.

**Section 1129(a)(3):**

Franklin is proposing the Plan in good faith and not by any means forbidden by Law.

**Section 1129(a)(4):**

Franklin has disclosed all payments previously made for services or for costs and expenses in this case, in its petition, and its applications for fees, and all applications for further fees for professional services rendered by Franklin's attorneys shall be submitted to the Court for Court approval as being reasonable.

**Section 1129(a)(5):**

Franklin, as proponent of the Plan, has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director or officer of Franklin and has also disclosed the identity of any insider that will be employed or retained by the reorganized Franklin, with the nature of any compensation for such insider.

**Section 1129(a)(6):**

No agency or regulatory commission has jurisdiction over any rates or charges by Franklin.

**Section 1129(a)(7):**

Franklin believes that all impaired classes will accept the Plan and that each holder of a claim of each Class will accept the Plan. All impaired creditors will receive at least as much under the Plan as they would in liquidation under Chapter 7 of the Code.

**Section 1129(a)(8):**

As stated above, Franklin is optimistic that each Class will accept the Plan. If any impaired Class does not accept the Plan prior to the confirmation date, Franklin intends to move for the application of §1129(b) with respect to any Class of claims not accepting the Plan.

**Section 1129(a)(9):**

The Plan treats holders of claims specified in §507(a)(1-7) as required.

**Section 1129(a)(10):**

Franklin believes that at least one Class will accept the Plan.

**Section 1129(a)(11):**

Confirmation of the proposed Plan is not likely to be followed by a further reorganization of Franklin.

**Section 1129(a)(12):**

All fees payable under 28 U.S.C.§1930, (i.e. filing fees and/or U.S. Trustee fees) as determined by the Court at the hearing on confirmation of the Plan, will have been paid by Franklin by effective date of the Plan.

**Section 1129(a)(13):**

Franklin has not maintained a retiree benefit Plan pre-petition.

### XIII. CONCLUSION

Franklin believes the distribution schedule proposed by the Plan will enable creditors to receive the maximum amount on their claims. Franklin strongly urges that all creditors accept the proposed Plan.

Dated: January 5, 2006

*Wendy A. Kinsella*
Wendy A. Kinsella, Esq. (Bar Roll No.508699)
HARRIS BEACH PLLC
One Park Place, Fourth Floor
300 South State Street
Syracuse, NY  13202
Telephone: (315) 423-7100

FRANKLIN INDUSTRIAL COMPLEX, INC.

By: Arthur H. Steckler, President

L:\KWT\Marina Bankruptcy\Plans and DS\Franklin Amended DS.doc
1/5/2006 4:36:10 PM