UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

MARINA DEVELOPMENT, INC.,                    Case No. 01-67451
                                             Chapter 11 Case
                    Debtor.


In re:

FRANKLIN INDUSTRIAL COMPLEX, INC.,           Case No. 01-67459
                                             Chapter 11 Case
                    Debtor.


In re:

CHRISTINE FALLS OF NEW YORK, INC.,           Case No. 01-67458
                                             Chapter 11 Case
                    Debtor.


In re:

TRAFALGAR POWER, INC.,                       Case No. 01-67457
                                             Chapter 11 Case
                    Debtor.


In re:

PINE RUN OF VIRGINIA, INC.,                  Case No. 01-67456
                                             Chapter 11 Case
                    Debtor.

                                             Jointly Administered


## STIPULATION EXTENDING DEBTORS' INTERIM
## LIMITED USE OF CASH COLLATERAL


Debtors Trafalgar Power, Inc. ("Trafalgar") and Christine Falls of New York, Inc.

("Christine Falls") (collectively, the "Debtors"), pursuant to 11 U.S.C. §§ 105, 361 and 363

and Rule 4001 of the Federal Rules of Bankruptcy Procedure, stipulate to: (i) the use of cash

D.       On or about January 15, 1996, the Debtors entered into a Revised Aetna Loan Agreement which restructured the Original Aetna Loan by exchanging promissory notes evidencing the Original Aetna Loan for (a) a new promissory note denominated as the "A Note" in the amount of $6,700,000.00 payable with interest at 9.75% (the "A Note") and (b) a new promissory note denominated as the "B Note" in the amount of $15,800,000.00 payable with interest at 6.10% (the "B Note"). The A Note was paid in full prior to the filing of the petitions for relief in these cases. The B Note was acquired from Aetna by Algonquin Power, along with all its right, title and interest in the related loan and security agreements. The B Note is secured by a mortgage and various security agreements, including, *inter alia*, a Mortgage concerning the premises on which the seven hydroelectric power plants operate in New York State. Algonquin Power transferred possession of the B Note to Algonquin Holdings, who subsequently transferred the B Note and related loan and security agreements to Algonquin Power Income Fund.

E.       Collectively, the Mortgage and personal property collateral described in the security agreements shall be referred to herein as the "Pre-Petition Collateral." The Pre-Petition Collateral includes certain Cash Collateral.

F.       The B Note, and all other related agreements and documents issued pursuant thereto or in connection therewith are collectively referred to herein as the "Credit Documents." The Debtors' obligations to Algonquin Power Income Fund as of the Petition Date, as such obligations are more specifically described and defined in the Credit Documents, shall be referred to herein as the "Pre-Petition Debt." Any claims of Algonquin Power Systems, Inc., or obligations incurred by Algonquin Power Systems, Inc. on behalf of the Debtors, as of the Petition Date, shall be referred to herein as the "APS Claim."

3

G.    On October 22, 2001, the North Carolina Bankruptcy Court issued an Order for the Debtors' Interim Limited Use of Cash Collateral and for Adequate Protection pursuant to which the Debtors were permitted to use cash collateral in the continuing operation of their hydroelectric power plant businesses. A copy of the October 22, 2001 Order is attached hereto as Exhibit "A". The October 22, 2001 Order extended the Debtors' authority to use cash collateral until October 25, 2001.

H.    On December 13, 2001, the North Carolina Bankruptcy Court issued a second Order fro the Debtors' Interim Limited Use of Cash Collateral and for Adequate Protection which extended the Debtor's authority to use cash collateral until February 28, 2001. A copy of the December 13, 2001 Order is attached hereto as Exhibit "B".

I.    In addition to the foregoing, on November 28, 2001, the North Carolina Bankruptcy Court issued an Order Approving Settlement and Compromise (Concerning Ownership of $7.6 Million Tort Judgment) (the "November 28, 2001 Order") pursuant to which the automatic stay was modified to permit the parties to return to the United States District Court for the Northern District of New York to seek the release of certain funds currently held in an escrow account at Morgan Stanley Dean Witter & Co., and totaling in excess of $10,000,000.00 (the "Escrowed Funds"), into an escrow account established in these cases and maintained under the jurisdiction of the Bankruptcy Court. The parties are currently in the process of applying to the District Court to obtain the release of those funds.

J.    The Debtors and Algonquin Power are in the process of negotiating the extent to which the escrowed funds may be available for the Debtors' use as cash collateral in the operation of their hydroelectric power plants. In the interim, Algonquin has indicated a willingness at this time to consent and agree to a third interim extension of the Debtors' authority to use cash collateral in these cases, subject to the terms and conditions of the

October 22, 2001 and December 13, 2001 Orders and a budget to be submitted to the Court and appended to this Stipulation at a latter date.

      K.     In exchange for Algonquin's consent and agreement to a third interim extension of the Debtors' authority to use cash collateral, the Debtors acknowledge the requirement that they continue to provide adequate protection to Algonquin herein.

      L.     The Debtors have requested immediate approval of this Stipulation pursuant to Rules 4001(b)(2) and (c)(2) of the Federal Rules of Bankruptcy Procedure.  The permission herein to allow the Debtors to use cash collateral and provide adequate protection is necessary to avoid immediate and irreparable harm to the Debtors and to maximize the value of the Debtors' business and assets.

## THEREFORE, IT IS HEREBY STIPULATED AND AGREED THAT:

      1.     **Use of Cash Collateral:**  Effective as of February 28, 2002 and through and including March 28, 2002, the Debtors are hereby authorized to use Cash Collateral, on an interim basis, in accordance with the terms and conditions set forth in the October 22, 2001 and December 13, 2001 Orders attached hereto and to perform its obligations thereunder in accordance with, and subject to, the terms of those Orders, this Stipulation and the budget to be provided to the Court.

      2.     **Adequate Protection:**  As adequate protection, in accordance with 11 U.S.C. §§ 361, 362 and 363, of Algonquin Power's interest in and to the Pre-Petition Collateral, Algonquin Power is hereby granted all interests previously granted to it and set forth in paragraph "3" of the October 22, 2001 and December 13, 2001 Orders.

3.    **Use of Escrowed Funds:**  Upon the issuance of an Order by the United States District Court for the Northern District of New York releasing the Escrowed Funds, the sum of $150,000.00 shall be paid to Hancock & Estabrook, LLP, as attorneys for the Debtors, as its retainer in these cases.  An addition sum of $150,000.00 shall be paid to Algonquin Power Income Fund which shall constitute additional adequate protection in accordance with 11 U.S.C. §§ 361, 362 and 363.  The balance of the Escrowed Funds shall be placed in an escrow account, managed and maintained by a third-party financial institution, and the use of said funds shall be subject to further Order of this Court.

4.    **Application of Prior Orders:**  Throughout the term of this Stipulation, the parties hereby agree that, unless modified by this Stipulation, the terms and conditions of the October 22, 2001 Order and December 13, 2001 Order shall apply and govern the Debtors' use of Cash Collateral and the granting of adequate protection to Algonquin Power herein.

5.    **Expiration of Authority to Use Cash Collateral:**  This Stipulation authorizing the Debtors to use Cash Collateral expires by its terms at 5:00 p.m. on March 28, 2002, after which time the Debtors may make no further use of Cash Collateral absent express written consent by Algonquin Power or further Order of this Court.

6.    **Hearing on Debtors' Continued Use of Cash Collateral:**  A hearing concerning the approval of the final Stipulation governing the Debtors' authority to use Cash Collateral and provide adequate protection shall be scheduled for March 28, 2002 in Binghamton, New York.  Written notice of said hearing, and a copy of the proposed final cash collateral stipulation, shall be provided by the Debtors to counsel for Algonquin, the Office of the United States Trustee and the Debtors' 20 largest unsecured creditors.

7.    **No Waiver of Rights:**  Notwithstanding anything to the contrary herein, the

entry of an Order approving this Stipulation with without prejudice to, and does not constitute

a waiver of, expressly or implicitly, or otherwise, of the rights of either the Debtors or

Algonquin Power to modify the terms of any prior Orders or agreements relating to the

Debtors' use of Cash Collateral and granting of adequate protection in these cases.


Dated:    February 27, 2002
          Syracuse, New York

TRAFALGAR POWER, INC. and
CHRISTINE FALLS OF NEW YORK, INC.
Debtors and Debtors in Possession

By: _____
    Stephen A. Donato, Esq.
    Hancock & Estabrook, LLP
    Attorneys for the Debtors


ALGONQUIN POWER INCOME FUND
ALGONQUIN POWER SYSTEMS, INC.

By: _____
    Jeffrey A. Dove, Esq.
    Menter, Rudin & Trivelpiece, P.C.
    Attorneys for Algonquin Power


F:\wpmain\26492\10288\JAD2602.

Exhibit A

**FILED**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

OCT 2 2 2001

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | |
|---|---|
| In re: MARINA DEVELOPMENT, INC., <br>            Debtor. | Case No: 01-02455-5-ATS |
| In re: FRANKLIN INDUSTRIAL COMPLEX, INC., <br>            Debtor. | Case No: 01-02454-5-ATS |
| In re: CHRISTINE FALLS OF NEW YORK, INC., <br>            Debtor. | Case No: 01-02453-5-ATS |
| In re: TRAFALGAR POWER, INC., <br>            Debtor. | Case No: 01-02452-5-ATS |
| In re: PINE RUN OF VIRGINIA, INC., <br>            Debtor. | Case No: 01-02451-5-ATS |

## ORDER FOR THE DEBTOR'S INTERIM LIMITED
## USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION

THIS CAUSE came before the undersigned United States Bankruptcy Judge upon the motion

of the Debtors, Trafalgar Power, Inc. and Christine Falls of New York, Inc. (the "Debtors"), for

expedited entry of an order authorizing the Debtors to use Cash Collateral and to provide Algonquin

Power Income Fund and Algonquin Power Systems, Inc. adequate protection for the use of Cash

Collateral and other collateral. As used herein, the term "Cash Collateral" shall have the meaning

set forth in Section 363(a) of the Bankruptcy Code.

### Background

A.    The Debtors commenced this bankruptcy case by filing their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 27, 2001 (the "Petition Date").  The Debtors have continued to operate their businesses as a debtors-in-possession pursuant to Section 1107 and Section 1108 of the Bankruptcy Code.

B.    Trafalgar Power, Inc. is a Delaware corporation which has  its principal office in Apex, North Carolina.  The Debtor owns six hydroelectric Power Projects located in Upstate New York

C.    Christine Falls of New York, Inc. is a New York corporation which has its principal office in Apex, North Carolina.  Christine Falls of New York, Inc. owns one hydroelectric Power Project in Upstate New York.

### Jurisdiction and Venue

D.    This Court has jurisdiction over this matter and the parties in interest and properties and interests affected hereby pursuant to 28 U.S.C. §157(b) and §1334.  This is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §1408 and §1409.

### Pre-Petition Credit Documents

E.    The Debtors entered into a Revised Aetna Loan Agreement on or about January 15, 1996, restructuring the Original Aetna Loan by exchanging promissory  notes evidencing the Original Aetna Loan for (a) a new promissory note denominated as the "A Note" in the amount of $6,700,000.00 payable with interest at 9.75% (the "A Note") and (b) a new promissory note denominated as the "B Note" in the amount of $15,800,000.00 payable with interest at 6.10% ( the

2

"B Note"). The "A Note" was paid in full prior to the filing of the petitions in these cases. The "B Note" was acquired from Aetna by Algonquin Power, along with all their right, title and interest in the related loan and security agreements. The "B Note" is secured by a mortgage and various security agreements, including, inter alia, a Mortgage concerning the premises on which the seven hydroelectric power plants operate in Upstate, New York. Algonquin Power transferred possession of the "B Note" to Algonquin Holdings who subsequently transferred the "B Note" and related loan and security agreements to Algonquin Power Income Fund.

F.     Collectively, the Mortgage, and personal property collateral described in the security agreements shall be referred to herein as the "Pre-Petition Collateral." The Pre-Petition Collateral includes certain Cash Collateral.

G.     The "B Note", and all other related agreements and documents issued pursuant thereto or in connection therewith are collectively referred to herein as the "Credit Documents." The Debtors' obligations to Algonquin Power Income Fund as of the Petition Date, as such obligations are more specifically described and defined in the Credit Documents, shall be referred to herein as the "Pre-Petition Debt." Any claims of Algonquin Power Systems Inc., or obligations incurred by Algonquin Power Systems, Inc. on behalf of the Debtors, as of the Petition Date, shall be referred to herein as the "APS Claim."

H.     The Debtors have requested Court approval for their use of Cash Collateral in order to continue their business operations and to maintain their going concern status. Debtors rely on the granting of a replacement lien, plus the maintenance of insurance, the continued protection of collateral, and the operation of the New York Projects by Algonquin Power Systems, Inc., the secured creditors' affiliate, which shall exercise its management duties as a fiduciary to the

3

bankruptcy estates, to provide adequate protection to Algonquin Power Income Fund and contingently to Algonquin Power Systems, Inc., regarding Debtors' use of Cash Collateral.

I.    An immediate need exists for the Debtors to use Cash Collateral in order to enable the Debtors to minimize disruption to and avoid the termination of their business operations. Entry of this Order will also enhance the possibility of a successful reorganization.

J.    Under the circumstances of the case, and for good cause shown, the terms and conditions of this Order are fair and reasonable, and the entry of this Order is in the best interests of the Debtors' estate and its creditors.

K.    The notice provided by the Debtors of the Motion and the hearing on the Motion and this Order satisfy the requirements of Rule 4001 of the Federal Rules of Bankruptcy Procedure and were otherwise sufficient and appropriate under the circumstances. Upon entry of this Order, the interests of Algonquin Power Income Fund in the Pre-Petition Collateral will be adequately protected.

**WHEREFORE, IT IS ORDERED THAT:**

1.    The Debtors are authorized to use Cash Collateral through 5:00 PM on October 25, 2001, on the following basis: (a) solely in accordance with and pursuant to the terms and provisions of this Order; (b) only to the extent required to pay those expenses enumerated in the Budgets attached hereto as Exhibit A; provided however, that the Debtors, through Algonquin Power Systems, Inc., as a fiduciary, shall be authorized to pay expenses in excess of those enumerated in the Budgets to the extent of a ten percent line item variance, or ten percent monthly total variance, (c) the Budgets are expense budgets and are not intended to require strict performance compliance

4

with any revenue/sales projections provided for illustrative purposes, and (d) no pre-petition debts of any kind shall be paid without prior specific Court Order, after notice and hearing.

2.　　　Algonquin Power Systems, Inc., as a fiduciary, shall deposit all proceeds of the Pre-Petition Collateral and the Post-Petition Collateral, including the proceeds of receivables collected after the filing of the Petitions, into separate accounts established for each Debtor in an FDIC insured institution located in the United States (the "Cash Collateral Account"). Algonquin Power Income Funds's liens and security interests and those asserted by Algonquin Power Systems, Inc. shall continue in full force and effect on such funds in the Cash Collateral Account. The liens and security interests asserted by Algonquin Power Systems, Inc. shall be deemed contingent until determined by Court Order.

3.　　　To adequately protect Algonquin Power Income Fund, and to the extent it is determined that Algonquin Power Systems, Inc. holds a valid lien or security interest, Algonquin Power Systems, Inc., in connection with the Debtors' use of Cash Collateral and any other property upon which the Debtors previously granted Algonquin Power Income Fund security interests and liens, or in which Algonquin Power Systems, Inc. is determined to have such an interest, the Debtors hereby grant, assign and pledge to Algonquin Power Income Fund and Algonquin Power Systems, Inc. a post-petition replacement security interest and lien (of the same validity, extent and priority as Algonquin Power Income Fund's and Algonquin Power System, Inc.'s respective pre-petition security interests or liens in the Pre-Petition Collateral in and to: (a) the Pre-Petition Collateral; (b) all proceeds from the disposition of any of the Pre-Petition Collateral, including Cash Collateral; (c) any assets or properties of the same type and description as the Pre-Petition Collateral generated or acquired by the Debtors after the Petition Date ((a), (b) and (c) above being referred to herein as

5

the "Post-Petition Collateral"),and (d) all proceeds of the Post-Petition Collateral. The liens and security interests granted to Algonquin Power Income Fund and contingently to Algonquin Power Systems, Inc. hereunder in the Post-Petition Collateral shall be granted as security for payment of the Pre-Petition Debt and APS Claim, respectively. Subject to the foregoing, the security interests and liens granted hereby shall be valid, perfected and enforceable security interests and liens on the property of the Debtors' estate without further filing or recording of any document or instrument or any other actions.

4. Algonquin Power Systems, Inc., as a fiduciary, use its best efforts to shall maintain insurance presently in place on the Pre-Petition Collateral and Post-Petition Collateral in the same amount, and of the kind, required in the Credit Documents and previously maintained by them prepetition, with Algonquin Power Income Fund reflected on such insurance policy/policies as additional insured or loss payee. Algonquin Power Systems, Inc., as a fiduciary, shall also properly preserve and maintain the Pre-Petition Collateral and Post-Petition Collateral in the ordinary course of its business.

5. Concurrently with any filing by the Debtors with the Court or service by the Debtors upon other parties, the Debtors shall provide to Algonquin Power Income Fund, by service on its counsel of record in the case, copies of any monthly reports, status reports, or financial information of any kind or nature, so filed or served, as well as copies of any motions, pleadings and other requests or objections filed by the Debtors.

6. Nothing herein shall be deemed to be a waiver by Algonquin Power Income Fund or Algonquin Power Systems, Inc. of their right to request additional or further adequate protection of their interests in property of the Debtors' estates (including the right to request periodic cash

6

payments to protect them against the depreciation, or other diminution in value, of their collateral),

to move for relief from the automatic stay, or to request any other relief in this case, nor shall any

provision herein be deemed to constitute a waiver of the Debtors' rights to oppose such additional

or further protection or relief on any basis.

7.    If any or all of the provisions of this Order are hereafter modified, vacated or stayed

by subsequent order of this Court or any other court, such stay, modification or vacation shall not

affect the validity or enforceability of any security interests, lien or priority authorized or created

hereby prior to the effective date of such modification, stay, vacation or final order. The validity and

enforceability of all security interests, liens and priorities authorized or created hereby shall survive

the conversion of any case to a case under Chapter 7 of the Bankruptcy Code and the dismissal of

this case, if any.  The provisions of this Order shall be binding upon and inure to the benefit of

Algonquin Power Income Fund, Algonquin Power Systems, Inc., the Debtors, and their respective

successors and assigns.  This Order shall bind any trustee hereafter appointed for the estates of the

Debtors, whether in the Chapter 11 case or in the event of conversion of any Chapter 11 case to a

liquidation under Chapter 7 of the Bankruptcy Code. Nothing herein shall be deemed to impair or

restrict Debtors' ability to formulate and propose a Plan of Reorganization. Debtors fully reserve the

right to contest the validity, perfection and enforceability of the secured claim of Algonquin Power

Income Fund and Algonquin Power Systems, Inc.

8.    The requirements of the Bankruptcy Rules, including without limitation Bankruptcy

Rule 4001(d), have been satisfied for the Debtors' use of Cash Collateral and for the grant of

adequate protection to Algonquin Power Income Fund and Algonquin Power Systems, Inc. on the

interim, limited basis set forth in this Order.

9.      The terms, conditions and limitations of this Order are reasonably tailored to protect the interests of all creditors of the estate notwithstanding the expedited entry of this Order after limited notice and opportunity for hearing.

10.     This Order authorizing the use of Cash Collateral expires by its terms at 5:00 p.m. on October 25, 2002, after which time the Debtors may make no further use of Cash Collateral absent express written consent by Algonquin Power Income Fund or further order of this Court.

11.     Algonquin Power Income Fund is hereby ordered to turnover to Algonquin Power Systems, Inc., as a fiduciary on behalf of the Debtors, on an immediate basis by wire transfer, all **funds held or received by Algonquin Power Income Fund post-petition**, including all funds coming under its control as of or after the August 27, 2001 Petition Date, that constitute Property of the Estates within the purview of 11 U.S.C. Section 541. Such funds shall be used by Debtors in accordance with this Order , with all disbursements from such account being made by Algonquin Power Systems, Inc., as a fiduciary.

12.     Pursuant to Federal Rule of Bankruptcy Procedure 4001(d), counsel for the Debtors shall serve upon Algonquin Power Income Fund, the United States Bankruptcy Administrator, and Debtors' twenty (20) largest unsecured creditors a copy of this Order. The Debtors' counsel shall file a certificate of such service with respect thereto. Any party-in-interest who objects to the terms and conditions of this Order must file such objections in writing and serve a copy thereof upon Debtors' counsel: Gregory B. Crampton, Nicholls & Crampton, P.A., Post Office Box 18237, Raleigh, North Carolina 27619, within ten (10) days of service of this Order. **Any such objections will be heard at the continued hearing on Debtor's Motion, which hearing is hereby set on**

October 25, 2001 at 1:00 PM in the United States Bankruptcy Court, 300 Fayetteville Street

Mall, Second Floor, Raleigh, North Carolina 27602.

Dated: OCT 2 2 2001

A. Thomas Small
United States Bankruptcy Judge

O:\CHP11DEB\TRAFALGERPOWER\cashcollord.newyork.wpd

9

Exhibit

**2001 Operating Budget-Trafalgar Power**
Site: Adams

| Project | Sept | Oct |
|---|---|---|
| **Plant Costs** | | |
| Insurance | | 2,841 |
| Real Estate Taxes | | |
| Lease Payment-Cranberry Lake | | |
| Bond Payments-Ogdensburg | | |
| Royalty Payment | | |
| City of Ogdensburg loan | | |
| FERC Annual Fees | | |
| Hydro Income Tax | | |
| Preventative Maintenance | 2,000 | 2,000 |
| Consumables | 100 | 100 |
| Utilities | 300 | 300 |
| Contingency/Repairs | 500 | 500 |
| Total Operating Costs | 2,900 | 5,741 |
| | | |
| Salaries(Operators/Supervisors/Maintenance) | 800 | 800 |
| | | |
| **Administrative Costs** | | |
| Management Fee | | |
| Mercer Cost | | |
| Net Management Fee | | |
| Bookkeeping/Accounting/Payroll | | |
| Safety/LOTO/Operations Training | | |
| Environmental Monitoring/Compliance/Reporting | | |
| Trade Memberships | | |
| | | |
| Telephone/Postage/Communications/Offices Supplies | | |
| Travel/Meals/Vehicle Costs | | |
| Audit Costs | | |
| General/Accounting Costs | | |
| Legal Expenses | | |
| Contingency Legal Costs | | |
| Trustee Fee | | |
| Total Administrative Expenses | 0 | 0 |
| | | |
| **Owner Supervision** | | |
| Original Trafalgar Supervision(Mercer) | | |
| Additional Owner Supervision(Mercer) | | |
| Total Owner Supervision | 0 | 0 |
| | | |
| **Total Expenses** | 3,700 | 6,541 |

**2001 Operating Budget - Trafalgar Power**
Slic Christie

| Project | Sept | Oct |
|---|---|---|
| **Plant Costs** | | |
| Insurance | | |
| Real Estate Taxes | | |
| Lease Payment - Cranberry Lake | | 5,649 |
| Bond Payment - Ogdensburg | | |
| Royalty Payment | | |
| Capex Ogdensburg plan | | |
| FERC Annual Fee | | |
| Hydro Income Tax | | |
| Preventative Maintenance | 2,000 | 2,000 |
| Consumables | 400 | 400 |
| Utilities | 300 | 300 |
| Contingency Repairs | 3,000 | 3,000 |
| Total Operating Costs | 5,700 | 11,349 |
| | | |
| Salaries (Operators/Supervisors/Maintenance) | 1,300 | 1,300 |
| | | |
| **Administrative Costs** | | |
| Management Fee | | |
| Mercer Cost | | |
| NetManagement Fee | | |
| Bookkeeping/Accounting/Payroll | | |
| Safety/LOTO/Operations Training | | |
| Environmental Monitoring/Compliance/Reporting | | |
| Trade Memberships | | |
| Telephone/Postage/Communications/Office Supplies | | |
| Travel/Meals/Vehicle Costs | | |
| Audit Costs | | |
| General Accounting Costs | | |
| Legal Expenses | | |
| Contingency Legal Costs | | |
| Trustee Fee | | |
| Total Administrative Expenses | 0 | 0 |
| | | |
| **Owner Supervision** | | |
| Original Trafalgar Supervision (Mercer) | 0 | 0 |
| Additional Owner Supervision (Mercer) | | |
| Total Owner Supervision | 7,000 | |
| | | |
| **Total Expenses** | 12,649 | 12,649 |



**2001 Operating Budget - Trafalgar Power**
**Site: Cranberry**

| Project | Sept | Oct |
|---|---|---|
| **Plant Costs** | | |
| Insurance | | |
| Real Estate Taxes | 3,359 | 7,808 |
| Lease Payment - Cranberry Lake | | |
| Bond Payment - Ogdensburg | | |
| Royalty Payment | | |
| City of Ogdensburg Loan | | |
| FERC Annual Fee | | |
| Hydro Income Tax | | |
| Preventative Maintenance | 500 | 500 |
| Consumables | 300 | 300 |
| Utilities | 300 | 300 |
| Contingency/Repairs | 8,000 | 8,000 |
| Total Operating Costs | 12,459 | 16,908 |
| | | |
| Salaries (Operators/Supervisors/Maintenance) | 1,600 | 1,600 |
| | | |
| **Administrative Costs** | | |
| Management Fee | | |
| Mercer Cost | | |
| Net Management Fee | | |
| Bookkeeping/Accounting/Payroll | | |
| Safety/LOTO/Operations Training | | |
| Environmental Monitoring/Compliance/Reporting | | |
| Trade Memberships | | |
| | | |
| Telephone/Postage/Communications/Office Supplies | | |
| Travel/Meals/Vehicle Costs | | |
| Audit Costs | | |
| General/Accounting Costs | | |
| Legal Expenses | | |
| Contingency/Legal Costs | | |
| Trustee Fee | | |
| Total Administrative Expenses | 0 | 0 |
| | | |
| Owner Supervision | | |
| Original Trafalgar Supervision (Mercer) | | |
| Additional Owner Supervision (Mercer) | | |
| Total Owner Supervision | 0 | 0 |
| | | |
| **Total Expenses** | 14,059 | 18,508 |

2001OperatingBudget-TrafalgarPower
Site:Fernsteat

| Project | Sept | Oct |
|---|---|---|
| **PlantCosts** | | |
| Insurance | | 88,200 |
| RealEstateTaxes | | |
| LeasePayment-CranberryLake | | |
| BondPayment-Ogdensburg | | |
| RoyaltyPayment | | |
| CityorOgdensburgtion | 5,932 | |
| FERCAnnualFees | | |
| HydroIncomeTax | | |
| PreventativeMaintenance | 2,000 | 2,000 |
| Consumables | 400 | 400 |
| Utilities | 1,000 | 1,000 |
| ContingencyRepairs | 3,000 | 3,000 |
| TotalOperatingCosts | 12,333 | 94,600 |
| | | |
| Salaries(Operators/Supervisors/Maintenance) | 3,300 | 3,300 |
| | | |
| **AdministrativeCosts** | | |
| ManagementFee | | |
| MercerCosts | | |
| NetManagementFee | | |
| Bookkeeping/Accounting/Payroll | | |
| SafetyLOTOOperationsTraining | | |
| EnvironmentalMonitoring/Compliance/Reporting | | |
| TradeMemberships | | |
| Telephone/Postage/Communications/OfficeSupplies | | |
| Travel/Meals/VehicleCosts | | |
| AuditCosts | | |
| GeneralAccountingCosts | | |
| LegalExpenses | 1,080 | |
| Contingency/LegalCosts | | |
| TrusteeFee | | |
| TotalAdministrativeExpenses | 1,080 | 0 |
| | | |
| **OwnerSupervision** | | |
| OriginalTrafalgarSupervision(Mercer) | | |
| AdditionalOwnerSupervision(Mercer) | | |
| TotalOwnerSupervision | 0 | 0 |
| | | |
| **Total Expenses** | 16,713 | 97,900 |



**2001 Operating Budget - Trafalgar Power**
**Site: Herkimer**

| Project | Sept | Oct |
|---|---|---|
| **PlantCosts** | | |
| Insurance | | |
| RealEstateTaxes | 900 | 9,735 |
| LeasePayment-CranberryLake | | |
| BondPayments-Ogdensburg | | |
| RoyaltyPayment | | |
| CityofOgdensburgloan | 6,545 | |
| FERCAnnualFees | | |
| HydroIncomeTax | | |
| PreventiveMaintenance | 100 | 100 |
| Consumables | 600 | 600 |
| Utilities | 450 | 450 |
| ContingencyRepairs | 48,000 | 48,000 |
| TotalOperatingCosts | 56,595 | 58,885 |
| | | |
| Salaries(Operators/Supervisors/Maintenance) | 5,100 | 5,100 |
| | | |
| AdministrativeCosts | | |
| ManagementFee | | |
| MercerCost | | |
| NetManagementFee | | |
| Bookkeeping/Accounting/Payroll | | |
| Safety/LOTO/OperationsTraining | | |
| EnvironmentalMonitoring/Compliance/Reporting | | |
| TradeMemberships | | |
| Telephone/Postage/Communications/OfficeSupplies | | |
| Travel/Meals/VehicleCosts | | |
| AuditCosts | | |
| GeneralAccountingCosts | | |
| LegalExpenses | | |
| ContingencyLegalCosts | | |
| TrusteeFee | 0 | 0 |
| TotalAdministrativeExpenses | | |
| | | |
| OwnerSupervision | | |
| OriginalTrafalgarSupervision(Mercer) | | |
| AdditionalOwnerSupervision(Mercer) | 0 | 0 |
| TotalOwnerSupervision | | |
| | | |
| **Total Expenses** | 61,695 | 63,985 |

2001 Operating Budget-Trafalgar Power
Site: Kayuta

| Project | Sept | Oct |
|---|---|---|
| **Plant Costs** | | |
| Insurance | | |
| Real Estate Taxes | | |
| Lease Payment-Cranberry Lake | | 18,695 |
| Bond Payments-Ogdensburg | | |
| Royalty Payment | | |
| City of Ogdensburg loan | | |
| FERC Annual Fees | | |
| Hydro Income Tax | | |
| Preventative Maintenance | | |
| Consumables | 2,000 | 2,000 |
| Utilities | 100 | 100 |
| Contingency Repairs | 200 | 200 |
| Total Operating Costs | 1,400 | 1,400 |
|  | 3,700 | 22,395 |
| | | |
| Salaries(Operators/Supervisors/Maintenance) | 300 | 300 |
| | | |
| **Administrative Costs** | | |
| Management Fee | | |
| Mercer Coal | | |
| Watchdrmanagement Fee | | |
| Bookkeeping/Accounting/Payroll | | |
| Safety/LOTO/Operation Training | | |
| Environmental Monitoring/Compliance/Reporting | | |
| Trade Memberships | | |
| Telephone/Postage/Communications/Office Supplies | | |
| Travel/Meals/Vehicle Costs | | |
| Audit Costs | | |
| General Accounting Costs | | |
| Legal Expenses | | |
| Contingency Legal Costs | | |
| Trustee Fee | | |
| Total Administrative Expenses | 0 | 0 |
| | | |
| **Owner Supervision** | | |
| Original Trafalgar Supervision (Mercer) | | |
| Additional Owner Supervision (Mercer) | | |
| Total Owner Supervision | 0 | 0 |
| | | |
| **Total Expenses** | **4,000** | **22,695** |

2001 Operating Budget-Trafalgar Power
Site: Ogdensburg

| Project | Sept | Oct |
|---|---|---|
| **Plant Costs** | | |
| Insurance | | |
| RealEstateTaxes | | 22,955 |
| LeasePayment-CranberryLake | 10,880 | |
| BondPayment-Ogdensburg | 25,000 | |
| RoyaltyPayment | 33,722 | |
| CityofOgdensburgloan | 8,789 | |
| FERCAnnualFees | | |
| HydroIncomeTax | | |
| PreventativeMaintenance | 100 | 100 |
| Consumables | 1,200 | 1,200 |
| Utilities | 1,500 | 1,500 |
| ContingencyRepairs | 3,000 | 3,000 |
| TotalOperatingCosts | 44,191 | 28,755 |
| | | |
| Salaries(Operations/Supervisors/Maintenance) | 4,400 | 4,400 |
| | | |
| **Administrative Costs** | | |
| ManagementFee | | |
| MercerCost | | |
| NetManagementFee | | |
| Bookkeeping/Accounting/Payroll | | |
| Sale/pt.OT/OperationsTraining | | |
| EnvironmentalMonitoring/Compliance/Reporting | | |
| TradeMemberships | | |
| | | |
| Telephone/Postage/Communications/OfficesSupplies | | |
| Travel/Meals/VehicleCosts | | |
| AuditCosts | | |
| GeneralAccountingCosts | | |
| LegalExpenses | | |
| ContingencyLegalCosts | | |
| TrusteeFee | | |
| TotalAdministrativeExpenses | | |
| | | |
| OwnerSupervision | | |
| OriginalTrafalgarSupervision(Mercer) | | |
| AdditionalOwnerSupervision(Mercer) | | |
| TotalOwnerSupervision | | |
| | | |
| Total Expenses | | |

**2001 Operating Budget - Trafalgar Power**
**Slic-Consolidated**

| Project | Sept | Oct |
|---|---:|---:|
| **Plant Costs** | | |
| Insurance | 0 | 0 |
| Real Estate Taxes | 4,259 | 155,884 |
| Lease Payment - Cranberry Lake | | |
| Bond Payment - Ogdensburg | 10,880 | 0 |
| Royalty Payment - Ogdensburg | 25,000 | 0 |
| City of Ogdensburg Loan | 33,722 | 0 |
| FERC Annual Fees | 21,265 | 0 |
| Hydro Income Tax | 0 | 0 |
| Preventative Maintenance | 8,700 | 8,700 |
| Consumables | 3,100 | 3,100 |
| Utilities | 4,050 | 4,050 |
| Contingency Repairs | 66,900 | 66,900 |
| Total Operating Costs | 177,876 | 238,634 |
| | | |
| Salaries (Operators/Supervisors/Maintenance) | 23,500 | 23,500 |
| | | |
| **Administrative Costs** | | |
| Management Fee | 12,500 | 12,500 |
| Mercer Cost (Paid by APS) | -8,500 | -5,032 |
| Net Management Fee | 6,000 | 7,468 |
| Bookkeeping/Accounting/Payroll | 3,600 | 3,600 |
| Safety/OTC/Operations Training | 2,300 | 2,300 |
| Environmental Monitoring/Compliance/Reporting | 1,500 | 1,500 |
| Trade Memberships | 486 | 486 |
| Telephone/Postage/Communications/Office Supplies | 1,390 | 1,390 |
| Travel/Meals/Vehicle Costs | 1,500 | 1,500 |
| Audit Costs | 0 | 0 |
| General Accounting Costs | 400 | 0 |
| Legal Expenses | 1,080 | 0 |
| Contingency Legal Costs | 0 | 0 |
| Trustee Fee | 0 | 0 |
| Total Administrative Expenses | 18,256 | 18,244 |
| | | |
| **Owner Supervision** | | |
| Original Trafalgar Supervision (Mercer) | 1,000 | 1,000 |
| Additional Owner Supervision (Mercer) | 6,500 | 6,500 |
| Total Owner Supervision | 7,500 | 7,500 |
| | | |
| Total Expenses | 227,133 | 287,877 |

Note(1): Three bi-weekly payrolls in this month

Exhibit B

**FILED**

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

DEC 1 3 2001

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | |
|---|---|
| In re: MARINA DEVELOPMENT, INC., <br> Debtor. | Case No: 01-02455-5-ATS |
| In re: FRANKLIN INDUSTRIAL COMPLEX, INC., <br> Debtor. | Case No: 01-02454-5-ATS |
| In re: CHRISTINE FALLS OF NEW YORK, INC., <br> Debtor. | Case No: 01-02453-5-ATS |
| In re: TRAFALGAR POWER, INC., <br> Debtor. | Case No: 01-02452-5-ATS |
| In re: PINE RUN OF VIRGINIA, INC., <br> Debtor. | Case No: 01-02451-5-ATS |

## ORDER FOR THE DEBTORS' INTERIM LIMITED
## USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION

THIS CAUSE came before the undersigned United States Bankruptcy Judge upon the motion of the Debtors, Trafalgar Power, Inc. and Christine Falls of New York, Inc. (the "Debtors"), for an order authorizing the Debtors to use Cash Collateral and to provide Algonquin Power Income Fund and Algonquin Power Systems, Inc. adequate protection for the use of Cash Collateral and other collateral. As used herein, the term "Cash Collateral" shall have the meaning set forth in Section 363(a) of the Bankruptcy Code.

### Background

A.      The Debtors commenced this bankruptcy case by filing their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 27, 2001 (the "Petition Date").  The Debtors have continued to operate their businesses as a debtors-in-possession pursuant to Section 1107 and Section 1108 of the Bankruptcy Code.

B.      Trafalgar Power, Inc. is a Delaware corporation which has  its principal office in Apex, North Carolina.  The Debtor owns six hydroelectric Power Projects located in Upstate New York

C.      Christine Falls of New York, Inc. is a New York corporation which has its principal office in Apex, North Carolina.  Christine Falls of New York, Inc. owns one hydroelectric Power Project in Upstate New York.

### Jurisdiction and Venue

D.      This Court has jurisdiction over this matter and the parties in interest and properties and interests affected hereby pursuant to 28 U.S.C. §157(b) and §1334.  This is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §1408 and §1409.

### Pre-Petition Credit Documents

E.      The Debtors entered into a Revised Aetna Loan Agreement on or about January 15, 1996, restructuring the Original Aetna Loan by exchanging promissory  notes evidencing the Original Aetna Loan for (a) a new promissory note denominated as the "A Note" in the amount of $6,700,000.00 payable with interest at 9.75% (the "A Note") and (b) a new promissory note denominated as the "B Note" in the amount of $15,800,000.00 payable with interest at 6.10% ( the

2

"B Note"). The "A Note" was paid in full prior to the filing of the petitions in these cases. The "B

Note" was acquired from Aetna by Algonquin Power, along with all their right, title and interest in

the related loan and security agreements. The "B Note" is secured by a mortgage and various

security agreements, including, <u>inter alia</u>, a Mortgage concerning the premises on which the seven

hydroelectric power plants operate in Upstate, New York. Algonquin Power transferred possession

of the "B Note" to Algonquin Holdings who subsequently transferred the "B Note" and related loan

and security agreements to Algonquin Power Income Fund.

F.     Collectively, the Mortgage, and personal property collateral described in the security

agreements shall be referred to herein as the "Pre-Petition Collateral." The Pre-Petition Collateral

includes certain Cash Collateral.

G.     The "B Note", and all other related agreements and documents issued pursuant thereto

or in connection therewith are collectively referred to herein as the "Credit Documents." The

Debtors' obligations to Algonquin Power Income Fund as of the Petition Date, as such obligations

are more specifically described and defined in the Credit Documents, shall be referred to herein as

the "Pre-Petition Debt." Any claims of Algonquin Power Systems Inc., or obligations incurred by

Algonquin Power Systems, Inc. on behalf of the Debtors, as of the Petition Date, shall be referred

to herein as the "APS Claim."

H.     The Debtors have requested Court approval for their use of Cash Collateral in order

to continue their business operations and to maintain their going concern status. Debtors rely on the

granting of a replacement lien, plus the maintenance of insurance, the continued protection of

collateral, and the operation of the New York  Projects by Algonquin Power Systems, Inc., the

secured creditors' affiliate, which shall exercise its management duties as a fiduciary to the

bankruptcy estates, to provide adequate protection to Algonquin Power Income Fund and

contingently to Algonquin Power Systems, Inc., regarding Debtors' use of Cash Collateral.

I.    The Debtors need to use Cash Collateral in order to enable the Debtors to minimize

disruption to and avoid the termination of their business operations. Entry of this Order will also

enhance the possibility of a successful reorganization.

J.    Under the circumstances of the case, and for good cause shown, the terms and

conditions of this Order are fair and reasonable, and the entry of this Order is in the best interests of

the Debtors' estate and its creditors.

K.    The notice provided by the Debtors of the Motion and the hearing on the Motion and

this Order satisfy the requirements of Rule 4001 of the Federal Rules of Bankruptcy Procedure and

were otherwise sufficient and appropriate under the circumstances. Upon entry of this Order, the

interests of Algonquin Power Income Fund in the Pre-Petition Collateral will be adequately

protected.

## WHEREFORE, IT IS ORDERED THAT:

1.    The Debtors are authorized to use Cash Collateral through 5:00 PM on February 28,

2002, on the following basis: (a) solely in accordance with and pursuant to the terms and provisions

of this Order; (b) only to the extent required to pay those expenses enumerated in the Budgets

attached hereto as Exhibit A; provided however, that  the Debtors, through Algonquin Power

Systems, Inc., as a fiduciary, shall be authorized to pay expenses in excess of those enumerated in

the Budgets to the extent of a ten percent line item variance, or ten percent monthly total variance,

(c) the Budgets are expense budgets and are not intended to require strict performance compliance

4

with any revenue/sales projections provided for illustrative purposes, and (d) no pre-petition debts

of any kind shall be paid without prior specific Court Order, after notice and hearing.

2.        Algonquin Power Systems, Inc., as a fiduciary, shall deposit all proceeds of the Pre-

Petition Collateral and the Post-Petition Collateral, including the proceeds of receivables collected

after the filing of the Petitions, into separate accounts established for each Debtor in an FDIC insured

institution located in the United States (the "Cash Collateral Account").   Algonquin Power Income

Funds's liens and security interests and those asserted by Algonquin Power Systems, Inc. shall

continue in full force and effect on such funds in the Cash Collateral Account. The liens and security

interests asserted by Algonquin Power Systems, Inc. shall be deemed contingent until determined

by Court Order.

3.        To adequately protect Algonquin Power Income Fund, and to the extent it is

determined that Algonquin Power Systems, Inc. holds a valid lien or security interest, Algonquin

Power Systems, Inc., in connection with the Debtors' use of Cash Collateral and any other property

upon which the Debtors previously granted Algonquin Power Income Fund security interests and

liens, or in which Algonquin Power Systems, Inc. is determined to have such an interest, the Debtors

hereby grant, assign and pledge to Algonquin Power Income Fund and Algonquin Power Systems,

Inc. a post-petition replacement security interest and lien (of the same validity, extent and priority

as Algonquin Power Income Fund's and Algonquin Power System, Inc.'s respective pre-petition

security interests or liens in the Pre-Petition Collateral in and to: (a) the Pre-Petition Collateral; (b)

all proceeds from the disposition of any of the Pre-Petition Collateral, including Cash Collateral;

(c) any assets or properties of the same type and description as the Pre-Petition Collateral generated

or acquired by the Debtors after the Petition Date ((a), (b) and (c) above being referred to herein as

the "Post-Petition Collateral"),and (d) all proceeds of the Post-Petition Collateral. The liens and

security interests granted to Algonquin Power Income Fund and contingently to Algonquin Power

Systems, Inc. hereunder in the Post-Petition Collateral shall be granted as security for payment of

the Pre-Petition Debt and APS Claim, respectively.  Subject to the foregoing, the security interests

and liens granted hereby shall be valid, perfected and enforceable security interests and liens on the

property of the Debtors' estate without further filing or recording of any document or instrument or

any other actions.

4.      Algonquin Power Systems, Inc., as a fiduciary, use its best efforts to shall  maintain

insurance presently in place on the Pre-Petition Collateral and Post-Petition Collateral in the same

amount, and of the kind, required in the Credit Documents and previously maintained by them

prepetition, with Algonquin Power Income Fund reflected on such insurance policy/policies as

additional insured or loss payee. Algonquin Power Systems, Inc., as a fiduciary, shall also properly

preserve and maintain the Pre-Petition Collateral and Post-Petition Collateral in the ordinary course

of its business.

5.      Concurrently with any filing by the Debtors with the Court or service by the Debtors

upon other parties, the Debtors shall provide to Algonquin Power Income Fund, by service on its

counsel of record in the case, copies of any monthly reports, status reports, or financial information

of any kind or nature, so filed or served, as well as copies of any motions, pleadings and other

requests or objections filed by the Debtors.

6.      Nothing herein shall be deemed to be a waiver by Algonquin Power Income Fund or

Algonquin Power Systems, Inc. of their right to request additional or further adequate protection of

their interests in property of the Debtors' estates (including the right to request periodic cash

6

payments to protect them against the depreciation, or other diminution in value, of their collateral),
to move for relief from the automatic stay, or to request any other relief in this case, nor shall any
provision herein be deemed to constitute a waiver of the Debtors' rights to oppose such additional
or further protection or relief on any basis.

7.     If any or all of the provisions of this Order are hereafter modified, vacated or stayed
by subsequent order of this Court or any other court, such stay, modification or vacation shall not
affect the validity or enforceability of any security interests, lien or priority authorized or created
hereby prior to the effective date of such modification, stay, vacation or final order. The validity and
enforceability of all security interests, liens and priorities authorized or created hereby shall survive
the conversion of any case to a case under Chapter 7 of the Bankruptcy Code and the dismissal of
this case, if any. The provisions of this Order shall be binding upon and inure to the benefit of
Algonquin Power Income Fund, Algonquin Power Systems, Inc., the Debtors, and their respective
successors and assigns. This Order shall bind any trustee hereafter appointed for the estates of the
Debtors, whether in the Chapter 11 case or in the event of conversion of any Chapter 11 case to a
liquidation under Chapter 7 of the Bankruptcy Code. Nothing herein shall be deemed to impair or
restrict Debtors' ability to formulate and propose a Plan of Reorganization. Debtors fully reserve the
right to contest the validity, perfection and enforceability of the secured claim of Algonquin Power
Income Fund and Algonquin Power Systems, Inc.

8.     The requirements of the Bankruptcy Rules, including without limitation Bankruptcy
Rule 4001(d), have been satisfied for the Debtors' use of Cash Collateral and for the grant of
adequate protection to Algonquin Power Income Fund and Algonquin Power Systems, Inc. on the
interim, limited basis set forth in this Order.

7

9.      The terms, conditions and limitations of this Order are reasonably tailored to protect
the interests of all creditors.

10.      This  Order authorizing the use of Cash Collateral expires by its terms at 5:00 p.m.
on February 28, 2002, after which time the Debtors may make no further use of Cash Collateral
absent express written consent by Algonquin Power Income Fund or further order of this Court.

11.      Algonquin Power Income Fund is  hereby ordered to turnover to Algonquin Power
Systems, Inc., as a fiduciary on behalf of the Debtors, on an immediate basis by wire transfer, all
funds **held or received by Algonquin Power Income Fund post-petition**, including all funds
coming under its control as of or after the August 27, 2001  Petition Date, that constitute Property
of the Estates within the purview of 11 U.S.C. Section 541. Such funds shall be used by Debtors in
accordance with this Order , with all disbursements from such account being made by Algonquin
Power Systems, Inc., as a fiduciary.

12.      Pursuant to Federal Rule of Bankruptcy Procedure 4001(d), counsel for the Debtors
shall serve upon Algonquin Power Income Fund, the United States Bankruptcy Administrator, and
Debtors' twenty (20) largest unsecured creditors a copy of this Order. The Debtors' counsel shall
file a certificate of such service with respect thereto.


Dated:  __DEC 1 3 2001__

A. Thomas Small
United States Bankruptcy Judge


O:\CHP11DEB\TRAFALGERPOWER\cashcollord.newyork.feb.wpd

## 2001 Operating Budget - Trafalgar Power
### Sites Consolidated

| Project | Jan | Feb | Total |
|---|---:|---:|---:|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | 0 | 76,700 | 76,700 |
| Real Estate Taxes | 44,907 | 44,907 | 89,814 |
| Lease Payment-Canbury Lake | 5,000 | 0 | 5,000 |
| Bond Payment-Ogdensburg | 0 | 0 | 0 |
| Royalty Payment - Ogdensburg | 0 | 0 | 0 |
| City of Ogdensburg loan | 0 | 0 | 0 |
| FERC Annual Fees | 0 | 0 | 0 |
| Hydro Income Tax | 0 | 0 | 0 |
| Preventive Maintenance | 6,900 | 6,900 | 13,800 |
| Consumables | 3,100 | 3,100 | 6,200 |
| Utilities | 4,050 | 4,050 | 8,100 |
| Contingency Repairs | 32,370 | 32,370 | 64,740 |
| Total Operating Costs | 96,327 | 168,027 | 264,355 |
| | | | |
| Salaries (Operations/Supervisors/Maintenance) | 23,500 | 23,500 | 47,000 |
| | | | |
| **Administrative Costs** | | | |
| Management Fee | 12,500 | 12,500 | 25,000 |
| Mercer Cost (Paid by APS) | 0 | 0 | 0 |
| Net Management Fee | 12,500 | 12,500 | 25,000 |
| Bookkeeping/Accounting/Payroll | 3,600 | 3,600 | 7,200 |
| Safety/LOTO/Operations Training | 2,300 | 2,300 | 4,600 |
| Environmental Monitoring / Compliance/ Reporting | 1,500 | 1,500 | 3,000 |
| Trade Memberships | 486 | 486 | 972 |
| Telephone/Postage/Communications/ Offices Supplies | 1,390 | 1,390 | 2,780 |
| Travel/Auto/Vehicle Costs | 1,500 | 1,500 | 3,000 |
| Audit Costs | 0 | 0 | 0 |
| General Accounting Costs | 0 | 0 | 0 |
| Legal Expenses | 0 | 0 | 0 |
| Contingency Legal Costs | 0 | 0 | 0 |
| Trustee Fee | 0 | 0 | 0 |
| Total Administrative Expenses | 23,276 | 23,276 | 46,552 |
| | | | |
| **Owner Supervision** | | | |
| Original Trafalgar Supervision (Mercer) | 6,500 | 6,500 | 13,000 |
| Additional Owner Supervision (Mercer) | 1,000 | 1,000 | 2,000 |
| Total Owner Supervision | 7,500 | 7,500 | 15,000 |
| | | | |
| **Total Expenses** | 150,603 | 222,303 | 372,907 |

**2002 Operating Budget - Trafalgar Power**
**Sitez Adams**

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | | | |
| Real Estate Taxes | | | |
| Lease Payment-Cranberry Lake | | | |
| Road Payment-Ogdensburg | | | |
| City of Ogdensburg loan | | | |
| Royalty Payment | | | 5,000 |
| FERC Annual Fee | | | 1,780 |
| Hydro Income Tax | 200 | 200 | 400 |
| Prevention Maintenance | 100 | 100 | 200 |
| Consumables | 300 | 300 | 600 |
| Utilities | | | |
| Contingency Repairs | 1,191 | 1,191 | 2,382 |
| Total Operating Costs | 2,091 | 2,091 | 11,362 |
| | | | |
| **Salaries (Operations/Supervisors/Maintenance)** | 800 | 800 | 1,600 |
| | | | |
| **Administrative Costs** | | | |
| Management Fee | | | |
| Rental Cost | | | |
| Net Management Fee | | | |
| Bookkeeping/Accounting/Payroll | | | |
| Safety/LOTO/Operations Training | | | |
| Environmental Monitoring / Compliance/ Reporting | | | |
| Trade Memberships | | | 0 |
| Telephone/Postage/Communications/ Offices Supplies | | | |
| Travel/Meals/Mileage Costs | | | |
| Audit Costs | | | |
| General Accounting Costs | | | |
| Legal Expenses | | | |
| Contingency Legal Costs | | | |
| Trustee Fees | | | |
| Total Administrative Expenses | 0 | 0 | 0 |
| | | | |
| Owner Supervision | | | |
| Original Trafalgar Supervision (Marcel) | | | |
| Additional Owner Supervision (Marcel) | | | |
| Total Owner Supervision | 0 | 0 | 0 |
| | | | |
| **Total Expenses** | **3,491** | **3,491** | **12,962** |

# 2002 Operating Budget - Trafalgar Power
## Eliot Chrisholm

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | 1,742 | 8,700 / 1,742 | 8,700 / 3,485 |
| Real Estate Taxes | | | |
| Lease Payment-Cranberry Lake | | | |
| Bond Payment-Ogdensburg | | | |
| Royalty Payment | | | |
| City of Ogdensburg loan | | | |
| FERC Annual Fees | | | |
| Hydro Income Tax | | | |
| Preventative Maintenance | | | |
| Consumables | 2,000 | 2,000 | 4,000 |
| Utilities | 400 | 400 | 800 |
| Contingency Repairs | 300 | 300 | 600 |
| Preventative Maintenance | 300 | | |
| Total Operating Costs | 2,637 | 2,637 | 5,275 |
| | 7,079 | 15,778 | 22,858 |
| **Salaries (Operations/Supervisors/Maintenance)** | 1,300 | 1,300 | 2,600 |

| | Jan | Feb | Total |
|---|---|---|---|
| **Administrative Costs** | | | |
| Management Fee | | | |
| Marcor Cost | | | |
| Net Management Fee | | | |
| Telephone/Postage/Communications/ Offices Supplies | | | |
| Travel/Meals/Vehicle Costs | | | |
| Audit Costs | | | |
| Bookkeeping/Accounting/Payroll | | | |
| Salary/LOTO/Operations Training | | | |
| Environmental Monitoring / Compliance/ Reporting | | | |
| Trade Memberships | | | |
| General/Accounting Costs | | | |
| Legal Expenses | | | |
| Contingency Legal Costs | | | |
| Trustee Fee | | | |
| **Total Administrative Expenses** | 0 | 0 | 0 |

| | Jan | Feb | Total |
|---|---|---|---|
| Owner Supervision | | | |
| Original Trafalgar Supervision (Marcor) | 0 | 0 | 0 |
| Additional Owner Supervision (Marcor) | | | |
| **Total Owner Supervision** | 0 | 0 | 0 |

| | Jan | Feb | Total |
|---|---|---|---|
| **Total Expenses** | 8,379 / 17,079 | 0 / 0 | 25,458 |

## 2002 Operating Budget - Trafalgar Power
## Site: Cranberry

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | 3,445 | 3,700 | 3,700 |
| Real Estate Taxes | 5,000 | 3,445 | 6,889 |
| Lease Payment-Cranberry Lake | | | 5,000 |
| Bond Payment-Ogdensburg | | | 0 |
| Royalty Payment | | | 0 |
| City of Ogdensburg fees | | | 0 |
| FERC Annual Fees | | | 0 |
| Hydro Income Tax | | | 0 |
| Preventative Maintenance | 500 | 540 | 1,000 |
| Consumables | 300 | 300 | 600 |
| Utilities | 300 | 300 | 600 |
| Contingency/Repairs | 5,280 | 5,280 | 10,559 |
| Total Operating Costs | 14,824 | 13,524 | 26,348 |
| | | | |
| Salaries (Operators/Supervisors/Maintenance) | 1,600 | 1,600 | 3,200 |
| | | | |
| **Administrative Costs** | | | |
| Management Fee | | | |
| Mercer Cost | | | |
| Net Management Fee | | | 0 |
| Bookkeeping/Accounting/Payroll | | | 0 |
| Safety/LOTO/Operations Training | | | 0 |
| Environmental Monitoring / Compliance/ Reporting | | | 0 |
| Telephone/Postage/Communications/ Offices Supplies | | | 0 |
| Trade Memberships | | | 0 |
| General/Accounting Costs | | | 0 |
| Audit Costs | | | 0 |
| Travel/Auto/Vehicle Costs | | | 0 |
| Legal Expenses | | | 0 |
| Contingency Legal Costs | | | 0 |
| Trustee Fee | | | 0 |
| Total Administrative Expenses | 0 | 0 | 0 |
| | | | |
| Owner Supervision | | | |
| Original Trafalgar Supervision (Mercer) | 0 | 0 | 0 |
| Additional Owner Supervision (Mercer) | | | 0 |
| Total Owner Supervision | 0 | 0 | 0 |
| | | | |
| **Total Expenses** | 16,424 | 15,124 | 31,548 |

**2002 Operating Budget - Trafalgar Power**
Site Rensselaer

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | 22,617 | 22,000 | 22,000 |
| Real Estate Taxes | | 22,617 | 45,233 |
| Lease Payment-Cranberry Lake | | | |
| Bond Payment-Ogdensburg | | | |
| Royalty Payment | | | |
| City of Ogdensburg loan | | | |
| FERC Annual Fees | | | |
| Hydro Income Tax | 2,000 | 2,000 | 4,000 |
| Preventative Maintenance | 400 | 400 | 800 |
| Consumables | 1,000 | 1,000 | 2,000 |
| Utilities | 2,984 | 2,984 | 5,929 |
| Contingency/Repairs | 24,981 | | |
| Total Operating Costs | 50,981 | 50,981 | 74,982 |
| | | | |
| Salaries (Operators/Supervisors/Maintenance) | 3,300 | 3,300 | 6,600 |
| | | | |
| **Administrative Costs** | | | |
| Management Fee | | | |
| Marcal Cost | | | |
| Net Management Fee | | | |
| Bookkeeping/Accounting/Payroll | | | |
| Safety/DOT/Operations Training | | | |
| Environmental Monitoring / Compliance Reporting | | | |
| Telephone/Postage/Communications/ Offices Supplies | | | |
| Trade Memberships | | | |
| Travel/Meals/Vehicle Costs | | | |
| Audit Costs | | | |
| General Accounting Costs | | | |
| Legal Expenses | | | |
| Contingency Legal Costs | | | |
| Trustee Fee | | | |
| Total Administrative Expenses | 0 | 0 | 0 |
| | | | |
| Owner Supervision | | | |
| Original Trafalgar Supervision (Marcal) | | | |
| Additional Owner Supervision (Marcal) | | | |
| Total Owner Supervision | 0 | 0 | 0 |
| | | | |
| **Total Expenses** | 32,281 | 54,281 | 86,582 |

**2001 Operating Budget - Trafalgar Power**
Site: Beekman

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Salaries (Operations/Supervisors/Maintenance)** | 5,180 | 5,100 | 10,200 |
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | | 15,000 | 15,000 |
| Real Estate Taxes | 4,358 | 4,356 | 8,712 |
| Lease Payment-Cranberry Lake | | | |
| Bond Payment-Ogdensburg | | | |
| Royalty Payment | | | |
| City of Ogdensburg loan | | | |
| FERC Annual Fees | | | |
| Hydro Income Tax | 100 | 100 | 200 |
| Prevention & Maintenance | 600 | 600 | 1,200 |
| Consumables | | | 900 |
| Utilities | 450 | 450 | 900 |
| Contingency Repairs | 17,158 | 17,158 | 34,316 |
| Total Operating Costs | 22,664 | 37,664 | 65,327 |
| **Administrative Costs** | | | |
| Management Fee | | | |
| Mercer Cost | | | |
| Net Management Fee | 0 | 0 | 0 |
| Bookkeeping/Accounting/Payroll | | | 0 |
| Safety/DOT/Operations Training | | | 0 |
| Environmental Monitoring / Compliance/ Reporting | | | 0 |
| Trade Memberships | | | 0 |
| Telephone/Postage/Communications/Office Supplies | | | 0 |
| Travel/Meals/Vehicle Costs | | | 0 |
| Audit Costs | | | 0 |
| General Accounting Costs | | | 0 |
| Legal Expenses | | | 0 |
| Contingency Legal Costs | | | 0 |
| Trustee Fee | | | 0 |
| Total Administrative Expenses | 0 | 0 | 0 |
| Owner Supervision (Mercer) | | | |
| Original Trafalgar Supervision (Mercer) | | | 0 |
| Additional Owner Supervision (Mercer) | | | 0 |
| Total Owner Supervision | 0 | 0 | 0 |
| **Total Expenses** | 27,764 | 42,764 | 70,527 |

## 2003 Operating Budget - Trafalgar Power
### Site: Kayuta

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | 4,699 | 4,699 | 9,398 |
| Real Estate Taxes | | 3,800 | 3,800 |
| Lease Payment-Cranberry Lake | | | 0 |
| Bond Payment-Ogdensburg | | | 0 |
| Royalty Payment | | | 0 |
| City of Ogdensburg loan | | | 0 |
| FERC Annual Fees | | | 0 |
| Hydro Income Tax | | | 0 |
| Preventative Maintenance | 2,000 | 2,000 | 4,000 |
| Consumables | 100 | 100 | 200 |
| Utilities | 200 | 200 | 400 |
| Contingency Repairs | 1,267 | 1,267 | 2,533 |
| Total Operating Costs | 8,266 | 12,066 | 20,332 |
| | | | |
| Salaries (Operators/Supervisors/Maintenance) | 300 | 300 | 600 |
| | | | |
| **Administrative Costs** | | | |
| Management Fee | | | 0 |
| Mercer Cost | | | 0 |
| Net Management Fee | | | 0 |
| Bookkeeping/Accounting/Payroll | | | 0 |
| Salary/LOTO/Operations Training | | | 0 |
| Environmental Monitoring / Compliance/ Reporting | | | 0 |
| Trade Memberships | | | 0 |
| Telephone/Postage/Communications/ Offices Supplies | | | 0 |
| Travel/Meals/Vehicle Costs | | | 0 |
| Audit Costs | | | 0 |
| General Accounting Costs | | | 0 |
| Legal Expenses | | | 0 |
| Contingency/ Legal Costs | | | 0 |
| Trustee Fee | | | 0 |
| Total Administrative Expenses | 0 | 0 | 0 |
| | | | |
| Owner Supervision | | | 0 |
| Original Trafalgar Supervision (Mercer) | | | 0 |
| Additional Owner Supervision (Mercer) | | | 0 |
| Total Owner Supervision | 0 | 0 | 0 |
| | | | |
| **Total Expenses** | 8,566 | 12,366 | 20,932 |

## 2001 Operating Budget - Trafalgar Power
**Site: Ogdensburg**

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | | 17,500 | 17,500 |
| Real Estate Taxes | 7,159 | 7,159 | 14,318 |
| Lease Payment-Cranberry Lake | | | 0 |
| Bond Payment-Ogdensburg | | | 0 |
| Royalty Payment | | | 0 |
| City of Ogdensburg loan | | | 0 |
| FERC Annual Fees | | | 0 |
| Hydro Income Tax | | | 0 |
| Preventative Maintenance | 100 | 100 | 200 |
| Consumables | 1,200 | 1,200 | 2,400 |
| Utilities | 1,500 | 1,500 | 3,000 |
| Coolingency/Repairs | 1,874 | 1,874 | 3,747 |
| Total Operating Costs | 11,833 | 29,333 | 41,166 |
| | | | |
| **Salaries (Operators/Supervisors/Maintenance)** | 4,400 | 4,400 | 8,800 |
| | | | |
| **Administrative Costs** | | | |
| Management Fee | | | 0 |
| Mercer Cost | | | 0 |
| Net Management Fee | | | 0 |
| Bookkeeping/Accounting/Payroll | | | 0 |
| Safety/LOTO/Operations Training | | | 0 |
| Environmental Monitoring / Compliance/ Reporting | | | 0 |
| Trade Memberships | | | 0 |
| Telephone/Postage/Communications/ Offices Supplies | | | 0 |
| Travel/Meals/Vehicle Costs | | | 0 |
| Audit Costs | | | 0 |
| General Accounting Costs | | | 0 |
| Legal Expenses | | | 0 |
| Contingency/Legal Costs | | | 0 |
| Trustee Fee | | | 0 |
| Total Administrative Expenses | 0 | 0 | 0 |
| | | | |
| **Owner Supervision** | | | |
| Original Trafalgar Supervision (Mercer) | | | 0 |
| Additional Owner Supervision (Mercer) | | | 0 |
| Total Owner Supervision | 0 | 0 | 0 |
| | | | |
| **Total Expenses** | 16,233 | 33,733 | 49,966 |

SIS 47   P.10/10

**2001 Operating Budget - Trafalgar Power**
**Site General**

| Project | Jan | Feb | Total |
|---|---|---|---|
| **Plant Costs** | | | |
| Insurance (estimated based on prior year) | | | |
| Real Estate Taxes | | | |
| Lease Payment-Cranberry Lake | | | |
| Bond Payment-Ogdensburg | | | |
| Royalty Payment | | | |
| City of Ogdensburg loan | | | |
| FERC Annual Fees | | | |
| Hydro Income Tax | | | |
| Preventative Maintenance | | | |
| Consumables | | | |
| Utilities | | | |
| Contingency Repairs | | | |
| Total Operating Costs | 0 | 0 | 0 |
| Salaries (Operators/Supervisors/Maintenance) | 6,700 | 6,700 | 13,400 |
| **Administrative Costs** | | | |
| Management Fee | 12,500 | 12,500 | 25,000 |
| Mercer Cost | | | 0 |
| Net Management Fee | 12,500 | 12,500 | 25,000 |
| Bookkeeping/Accounting/Payroll | 3,600 | 3,600 | 7,200 |
| Safety/LOTO/Operations Training | 2,300 | 2,300 | 4,600 |
| Environmental Monitoring / Compliance Reporting | 1,500 | 1,500 | 3,000 |
| Trade Memberships | 486 | 486 | 972 |
| Telephone/Postage/Communications/Offices Supplies | 1,390 | 1,390 | 2,780 |
| Travel/Meals/Vehicle Costs | 1,500 | 1,500 | 3,000 |
| Audit Costs | | | |
| General Accounting Costs | | | |
| Legal Expenses | | | |
| Contingency Legal Costs | | | |
| Trustee Fee | | | |
| Total Administrative Expenses | 23,276 | 23,276 | 46,552 |
| Owner Supervision | 1,000 | 1,000 | 2,000 |
| Original Trafalgar Supervision (Merton) | 6,500 | 6,500 | 13,000 |
| Additional Owner Supervision (Marcel) | 7,500 | 7,500 | 15,000 |
| Total Owner Supervision | | | |
| **Total Expenses** | 37,476 | 37,476 | 74,952 |