Wendy Kinsella, Esq.
Harris Beach LLP
Attorneys for Debtors
One Park Place
300 S. State Street
Syracuse, New York 13202

Jeffrey A. Dove, Esq.
Menter, Rudin & Trivelpiece, P.C.
Attorneys for Algonquin Power Corp., Inc.
500 South Salina St., Suite 500
Syracuse, New York 13202-3300

Guy A. Van Baalen, Esq.
Assistant U.S. Trustee
10 Broad Street
Utica, New York 13501

Re:     Franklin Industrial Complex, Inc.     Case No. 01-67459
        Christine Falls of New York, Inc.     Case No. 01-67458
        Trafalgar Power Inc.                   Case No. 01-67457  (main case)
        Chapter 11 Jointly Administered

## LETTER ORDER

Before the Court are two Applications for Allowance ("Fee Applications") filed in the above

referenced jointly administered cases.  The first application, which was filed by J. D. Cox &

Associates Company, Inc. ("Cox")("Cox Application"), on November 15, 2005, covers the period

from July 22, 2005 through August 8, 2005, and seeks fees in the amount of $19,981.50 and

expenses in the amount of $44.07.  The second application, which was filed by the Bonadio Group

("Bonadio")("Bonadio Application), on November 15, 2005, covers the period May 19, 2005

through September 30, 2005 and seeks fees in the amount of $49,982.50 and expenses in the amount

2

of $1591.41.

Both Fee Applications appeared on the Court's calendar on December 6, 2005, in Syracuse, N.Y. An Objection to both Applications was filed by the Algonquin Entities ("Algonquin"), alleged secured creditors of the jointly administered Debtors and manager of their hydroelectric plants.[1] [2] The Court heard oral argument on the Objection on a number of subsequent motion dates. On March 7, 2006, the Court rejected that portion of Algonquin's Objection which asserted that Cox and Bonadio provided no benefit to the respective Debtors' estates, but took under submission the actual value of that benefit in light of the balance of the Algonquin Objection.

Generally, Algonquin noted at oral argument that as an alleged secured creditor whose liens attach to all of the Debtors' assets, its collateral cannot be charged with the payment of any administrative expenses allowed pursuant to § 503(b) of the Bankruptcy Code ( 11 U.S.C. §§ 101 through 1330)("Code"). Additionally, with regard to the Cox Application, Algonquin noted four areas of concern: first, they questioned Cox's services relating to the "calculation of interest accruals on inter-company loans primarily with non-debtor affiliates, many of whom have been written off by the Debtors;" second, they questioned Cox's "services for making journal entries and preparing the financial statement for a company(Pine Run) that the Debtors admit has not had any operations since the commencement of these bankruptcy proceedings;" third, Algonquin asserts that Cox was utilizing a "Certified Public Accountant," as opposed to a bookkeeper, to make routine journal

---

[1] On December 22, 2005, this Court entered an Order severing the jointly administered case of Marina Development, Inc. from the within jointly administered case, and by Order of the same date the case of Marina Development, Inc. was dismissed.

[2] Algonquin Power Corporation, Inc., Algonquin Power Systems, Inc., Algonquin Power Fund (Canada), The Algonquin Power Income Fund, Algonquin Power Systems New Hampshire, Inc. and Algonquin Power (US) Holdings Inc. are referred to herein as the "Alonquin Entities."

3

entries; finally, they infer that Cox failed to timely file a corporate tax return of the Debtors required

by New York State for the tax year 2003.  (Algonquin's Objection To Application For Allowance

Of Fees and Expenses dated December 1, 2005, paragraphs 9-12).

Cox responds to the Algonquin Objection in the Affidavit of James D. Cox, sworn to on the

12th day of December 2005.   Cox explains that the computation of inter-company interest

presumably paid on inter-company loans by and between the Debtors and their non-debtor

subsidiaries was necessary in order to file a consolidated tax return for the "parent company" ( then

Marina), thus, lowering the Debtors' overall tax burden.  Cox notes that Pine Run was necessarily

included in these computations.  With regard to journal entries being made by an accountant as

opposed to a bookkeeper, Cox asserts that these entries were far from routine and could not have

been delegated to a bookkeeper.  He contends that much of the information provided by Algonquin

as, inter alia, a manager of a number of the Debtors' hydroelectric facilities was error filled requiring

the expertise of an accountant to review and correct.  With regard to the failure of the Debtors to file

certain corporate tax returns for the 2003 tax year, Cox responds that his firm was not authorized to

prepare and file any tax returns for the Debtors until the Court expanded its duties pursuant to an

Order dated June 7, 2005 ("June Order"), and the June Order limited the authorization to tax returns

due for the fiscal year ending March 31, 2004. Cox notes that notwithstanding the June Order, it did,

in fact, prepare Debtors' state corporate return (CT-186-A) for tax year 2003, and the admitted late

filing of that return was again allegedly due to Algonquin's failure to timely provide certain

accounting information.[3]

---

[3] The Cox Application does not appear to request compensation for services rendered in
connection with the CT-186A.

4

In reviewing Cox's contemporaneous time records, the Court expresses some concern that

the entirety of services reflected in the Cox Application were performed by James Cox himself with

apparently no delegation of responsibility to any other member of the firm.[4]  While typically the

Court would make an adjustment to the overall compensation requested to deter the practice of a

professional firm billing its entire assignment at the rate of its most highly compensated member,

the Court, in this instance, will accept Cox's explanation that the assignment of preparing the

Debtors' corporate tax returns within a relatively short period of time utilizing somewhat erroneous

and untimely information required his level of expertise and could not be delegated to other firm

members.  Accordingly the Court will make no adjustments to the fees and expense requested in the

current Cox Application.

Turning to the Bonadio Application, the Court notes that it too is an accounting firm

appointed pursuant to an Order of the Court dated June 14, 2005, to provide forensic accounting and

business consulting services to the Debtors.  As indicated, its appointment was made effective May

16, 2005, and its Fee Application covers the period May 19, 2005 through September 30, 2005.  In

their Objection, the Algonquin Entities note that Bonadio is, in fact, the second forensic accountant

hired by the Debtors, the first being Gilbert Cooper ("Cooper"), appointed in 2001, who had billed

the estate some $20,000 for essentially the same services subsequently being performed by Bonadio.

In response to that objection, Debtors' counsel contends that while it did not represent the Debtors

at the time Cooper's services were rendered, it reviewed Cooper's invoices (which are attached) and

---

[4] In his Supplemental Accountant's Affidavit, sworn to on May 12, 2005, filed in support of his firm's expanded authorization, James Cox identified the hourly rates of the various members of the Firm.  His hourly rate of $165 per hour was significantly higher than any other member of the firm.

5

discussed with the Debtors' management Cooper's role, and has concluded that while Cooper

performed a preliminary analysis of financial records maintained "by Algonquin and State Street

Bank," Cooper did not undertake, "a complete financial analysis of those records." (Affidavit of

Wendy Kinsella, Esq., sworn to on December 19, 2005, ¶ 4and 5).[5]  Additionally, Algonquin

observes that neither Bonadio, nor Cox, specifically indicate which of the "non -substantively

consolidated Debtors their work was performed for, and which Debtor, . . . . . should be liable for

such fees." (Algonquin's Objection to Application For Fees And Expenses dated December 1, 2005,

¶ 15).[6]  Algonquin reiterates its position that as to the Debtors, Trafalgar Power, Inc ("TPI") and

Christine Falls of New York, Inc.("CF"), any such compensation payable out of current revenues

would constitute an invasion of its cash collateral. In this regard, the Court indicated at the March

7th hearing that, while it would consider the actual value of the services reflected in the Fee

Applications, it would not pass upon the issue of payment.

The Court is satisfied with the explanation of Debtors' current counsel that Bonadio has not

significantly duplicated the efforts of a prior forensic accountant retained by Debtors and that

Bonadio's efforts may well result in significant benefit to the Debtors' estate vis a vis pending

litigation with the Algonquin entities.  An analysis of the Bonadio Application, together with the

supporting contemporaneous time records does not reveal any non-compensable entries other than

Bonadio billing its travel time at a full hourly rate, a practice this Court does not permit.  Total fees

---

[5] The Court observes that Bonadio's forensic accounting is intended to support the Debtors' allegations of certain "accounting improprieties" in connection with alleged obligations due and owing to the Algonquin Entities identified generally as the "A" and "B" notes.

[6] In fact, in Exhibit B attached to the Cox Application, it does allocate its time between the various jointly administered Debtors.  With regard to the Bonadio Application, it appears that the bulk of the services were rendered on behalf of Trafalgar Power, Inc.

6

for the travel time reflected in the Bonadio Application are $4,470, which will be reduced by 50%

to $2,235.  The balance of the Bonadio Application appears reasonable with Bonadio utilizing a

number of its personnel to perform a variety of tasks thereby billing the assignment at a lower

blended hourly rate.  Therefore, the Court will approve the Bonadio Application in the reduced sum

of $47,747.50 in fees and $1,591.41 in expense reimbursement.

Again as the Court has indicated while it has approved the Fee Applications as provided

herein, it makes no direction with regard to the source of payment of the fees at this juncture, with

the issue of payment being the subject of a further order of the Court.

IT IS SO ORDERED

Dated at Utica, New York

this 12th day of May 2006

/s/    Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge