UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

FRANKLIN INDUSTRIAL COMPLEX, INC.           CASE NO. 01-67459
                                            Chapter 11
                    Debtor                  Jointly Administered
--------------------------------------------------------
IN RE:

CHRISTINE FALLS OF NEW YORK, INC.           CASE NO. 01-67458

                    Debtor
--------------------------------------------------------
IN RE:

TRAFALGAR POWER, INC.                       CASE NO. 01-67457
                                            (Main Case)
                    Debtor
--------------------------------------------------------
APPEARANCES:

HARRIS BEACH PLLC                           WENDY A. KINSELLA, ESQ.
Attorneys for Debtors                       Of Counsel
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202

MENTER, RUDIN & TRIVELPIECE, P.C.           JEFFREY A. DOVE, ESQ.
Attorneys for Algonquin Entities            Of Counsel
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1498

GREEN & SEIFTER, PLLC                       ROBERT K. WEILER, ESQ.
Attorneys for Ridgewood Heights, Inc., et al.   Of Counsel
One Lincoln Center
Syracuse, New York 13202

AMY F. QUANDT, ESQ.
Trial Attorney, U.S. Trustee
10 Broad Street
Utica, New York 13501

| | |
|---|---|
| MORGAN LAW FIRM, P.C. | WILLIAM R. MORGAN, ESQ. |
| Attorneys for Hydro Investors, Inc. | Of Counsel |
| 325 University Building | |
| Syracuse, New York 13202-4096 | |
| | |
| SHIPMAN & GOODWIN, LLP | KATHLEEN M. LA MANNA, ESQ. |
| Attorneys for U.S. Bank National Association | Of Counsel |
| One Constitution Plaza | |
| Hartford, CT  06103 | |

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Under consideration by the Court are separate disclosure statements filed pursuant to § 1125 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code").  The first disclosure statement ("Algonquin DS") was filed on December 12, 2007 on behalf of Algonquin Power Corporation, Inc. (""APCI"), Algonquin Power Fund (Canada), Inc. ("APC") and Algonquin Power Income Fund ("APIF") (collectively "Algonquin" or the "Alqonquin entities").  On February 1, 2008, three separate disclosure statements ("Debtors' DS") were filed on behalf of Christine Falls of New York, Inc. ("CFC"), Franklin Industrial Complex, Inc. ("Franklin") and Trafalgar Power, Inc. ("TPI") (collectively the "Debtors").

Approval of the Algonquin DS was scheduled to be heard on January 29, 2008, at the Court's regular motion term in Utica, New York.  That hearing was adjourned to February 26, 2008, the day on which the motion by the Debtors seeking approval of their disclosure statements was to be heard.  Both motions were adjourned to March 25, 2008, after the Court requested that memoranda of law be submitted on issues raised at the hearing on February 26, 2008.  Following oral argument on March 25, 2008, the Court indicated that it would issue a written Order

addressing the motions.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of these contested matters pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(A), (L) and (O).

## FACTUAL BACKGROUND

The following facts are derived from a decision of the U.S. District Court for the Northern District of New York ("District Court"):

> In 1988, TPI financed the construction and operation of seven hydroelectric power plants in New York State ("power projects") by taking out a loan in the principal amount of $22,500,000 from Aetna ("Aetna loan"). TPI pledged substantially all of its assets, including the power projects, as collateral.
> In 1989, TPI commenced a lawsuit against the engineering firm that designed the power projects, alleging engineering malpractice regarding the design of the power projects as it related to the projected power generation potential (and income generation). This lawsuit was successful and TPI eventually obtained a judgment in the amount of $7.6 million ("malpractice judgment" or ["Stetson-Harza judgment"]). *See generally Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 63 F.Supp.2d 225 (N.D.N.Y.1999) (denying post-trial motions), *aff'd in part, vacated & remanded in part,* 227 F.3d 8 (2d Cir.2000) (vacating denial of prejudgment interest and remanding for calculation of such interest).
> Meanwhile, TPI defaulted on the Aetna loan, and on January 19, 1995, Aetna notified TPI of the default and its intent to accelerate the entire balance immediately due and to foreclose on the collateral. At that time the entire principal amount of $22,500,000 was owed, as was $10,199,659.50 in accrued interest.

4

*Trafalgar Power, Inc. v. Aetna Life Ins. Co.,* 427 F.Supp.2d 202, 204 -205 (N.D.N.Y. 2006).

On or about January 15, 1996, Aetna, TPI and CFC agreed to restructure the 1988 loan agreements, and the debt was restructured into a $6.7 million "A" Note and a $15.8 million "B" Note. In connection with their negotiations, Aetna Life Insurance Company ("Aetna") also required that TPI hire an operator/manager for the power projects as a pre-condition to any restructured loan. Accordingly, TPI hired Algonquin to operate and manage the power projects. Ultimately, Aetna sold the "B" Note to an affiliate of APC and in September 1997, Aetna and APC agreed upon terms for APC's purchase of the "A" Note (collectively, the "Notes").

On February 4, 1999, Hydro Investors, Inc. ("HII") filed a complaint with the Federal Regulatory Energy Commission ("FERC") against TPI, CFC, Franklin, et al., alleging that TPI had violated the Federal Power Act by never formally transferring its licenses to the Algonquin entities despite the fact that the Algonquin entities had taken over control of the projects sometime between 1995 and 1996. Ultimately, on appeal to the D.C. Circuit Court, HII's complaint/petition was dismissed. *See Hydro Investors, Inc. v. Trafalgar Power Inc.,* 98 FERC ¶ 61,272, 2002 WL 389127 (F.E.R.C. March 13, 2002), *reh'g denied*, 99 FERC ¶ 61384, 2002 WL 1435874 (F.E.R.C. June 28, 2002), *petition for review denied sub nom. Hydro Investors, Inc. v. F.E.R.C.*, 351 F.3d 1192 (D.C. Cir. 2003).

In the interim, on August 9, 1999, TPI and CFC commenced an action in the District Court against Aetna, as well as APC and others (Civil Action 99-cv-1238), challenging the sale of the Notes to APC. According to the Debtors, in their complaint there are allegations against the Algonquin entities that they violated their contractual and fiduciary duties in acquiring the Notes and have engaged in a course of mismanagement, breach of fiduciary duty and self-dealing.

5

On August 15, 2000, the Algonquin entities filed a complaint in the District Court against TPI and CFC, *inter alia*, (Civil Case No. 00-cv-01246), in which they asserted a security interest in the Stetson-Harza judgment and the resultant funds on deposit in the escrow account. The two actions were consolidated by Order dated November 8, 2000 ("District Court Litigation").

Hon. David Hurd, U.S. District Judge for the District Court dismissed all claims in the District Court Litigation relating to the "A" and "B" Notes and dismissed Aetna as a party to the lawsuit. According to the Debtors, there exists the possibility of an award of $41 million in damages against Algonquin in connection with the balance of the District Court Litigation, which is still in the discovery stage.[1] It is the position of the Algonquin entities that "even if there were valid claims of mismanagement (which Algonquin vigorously disputes), that TPI and CFC would never be entitled to recover damages until the B Note (which had a balance due on the Petition Date of in excess of $18.8 million) was paid in full." *See* Algonquin DS at 17.

On August 27, 2001, the Debtors filed voluntary petitions pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of North Carolina. The cases were transferred to this Court on or about December 26, 2001.

Hydro Investors, Inc. - Involvement in the Bankruptcy Proceedings

Relevant to the discussion below, on August 16, 2005, this Court issued a Memorandum-Decision, Findings of Fact, Conclusions of Law and Order ("August 2005 Decision") in the case

---

[1] According to the docket, TPI was granted an extension of the deadline for its completion of fact discovery to March 31, 2008 "for the limited and exclusive purpose of permitting it to pursue the necessary procedures to obtain the deposition testimony of Peter Kampian, the former CFO of certain of the Algonquin defendants." (Dkt. No. 255 in lead case 99-cv-01238).

6

of Marina Development, Inc. (Case No. 01-67451) ("Marina"), a related debtor-entity whose case was severed from that of the Debtors now appearing on these motions and which case was dismissed on December 22, 2005.  In the August 2005 Decision, this Court disallowed three proofs of claim filed by HII.  These included a claim of $5 million against Marina for misappropriation; a second claim of $3 million against a related entity, Franklin Industrial Complex, Inc., for misappropriation and a third claim against TPI of $7.3 million based on a "non-subordinated joint venture," allegedly secured by real property.  The Court adjourned indefinitely HII's fourth claim asserted against CFC as a secured claim of $3.2 million, pending a determination in state court.  On October 24, 2005, the Court denied HII's motion for reconsideration filed on August 26, 2005.

On September 25, 2007, the August 2005 Decision, as well as the Order denying reconsideration, were affirmed by Judge Hurd.  The appeal of Judge Hurd's decision is currently pending in the U.S. Court of Appeals for the Second Circuit (Civil Case No. 07-4692).  On October 24, 2005, the Court also denied HII's request that it be allowed to proceed in state court to obtain an accounting in connection with certain alleged joint ventures ("October 2005 Order").  The October 2005 Order was affirmed by Judge Hurd in January 2008 and appealed by HII to the Court of Appeals for the Second Circuit (Civil Case No. 08-0861).  At the hearing held on March 25, 2008, it was represented to this Court that the two appeals had been consolidated ("HII Appeals").  According to the docket in Civil Case No. 07-4692, argument had originally been scheduled for the week of May 12, 2008.  According to the docket in Civil Case No. 08-0861, argument was scheduled for July 7, 2008, with a pre-argument conference scheduled for April 4, 2008.

Algonquin Entities - Involvement in the Bankruptcy Proceedings

On December 28, 2006, the Debtors commenced an adversary proceeding against the Algonquin entities, *inter alia* (Adv. Pro. No. 06-80302). On October 30, 2007, this Court issued its Memorandum-Decision, Findings of Fact, Conclusions of Law and Order ("October 2007 Decision") in which the Court granted the Debtors/Plaintiffs' motion for summary judgment based on its conclusion that the "Defendants' claim to have been granted a security interest in the Stetson-Harza Judgment 'lacks merit.'" *See* October 2007 Decision at 37. The October 2007 Decision is currently on appeal before Judge Hurd in the District Court (Civil Case No. 07-cv-1258).

On November 2, 2007, the Algonquin entities filed a motion for an allowance of a superpriority administrative expense claim pursuant to Code § 507(b) in the amount of not less than $10 million. The motion was heard on December 18, 2007, and adjourned to January 29, 2008, when the Court indicated that it would give the parties an opportunity to file memoranda of law. The motion was submitted for decision on February 25, 2008.

**DISCUSSION**

It is in this context that the Court must consider the motions to approve the respective disclosure statements. As the Court indicated at the hearing on March 25, 2008, it was of the opinion that both the Algonquin DS and the Debtors' DS were probably adequate if one were to judge them solely from a Code § 1125 perspective. However, the Court questioned the advisability of moving forward on a parallel track to confirmation at this time and agreed with

8

the parties that because of a number of contingencies as set forth above, it was likely that the proposed plans would have to be substantially amended. Thus, to approve the disclosure statements associated with the current proposed plans arguably would constitute a waste of judicial resources at this stage of the various proceedings. The Court went on to identify some of its concerns with respect to the plan of the Algonquin entities, as well as the plans submitted by the Debtors:

<u>Debtors' Disclosure Statements/Plans</u>

Debtors admit that unless the Code § 507(b) superpriority administrative expense claim is determined to be $4.1 million or less, their plans would not be confirmable unless Marina, a nondebtor, agreed to fund the plans. There is also the fact that the Algonquin entities have appealed the Court's October 2007 Decision, which ruled on the extent of their security interest in the malpractice proceeds currently on deposit in an escrow account. Should the Algonquin entities succeed ultimately on their appeal, this would be a serious impediment to the confirmability of the Debtors' plans because of their reliance on the use of the escrow account to fund them. On the other hand, the Debtors assert that if they are successful in the District Court Litigation, Algonquin will no longer be a creditor but will, in fact, be their account debtor, owing them many millions of dollars.

<u>Algonquin's Disclosure Statement/Plan</u>

The Algonquin Plan is premised on a single event, namely the cancellation of current equity in both TPI amd CFC. Their plan contemplates the cancellation of old equity pursuant to a certain Stock Pledge Agreement and the take over of the power facilities by Algonquin. The Debtors contend that Algonquin cannot cancel old equity. Initially, it is the Debtors' position that

9

Code § 1129(a)(7) cannot be satisfied if the Code § 507(b) claim of the Algonquin entities is denied as there would be a distribution to old equity for which the Algonquin entities have made no provision for payment.

In addition, the Debtors contend that this Court lacks jurisdiction to address the validity of the Stock Pledge Agreement at least as it impacts on the TPI stock held by Marina. Questions are raised by the Debtors concerning whether the Algonquin entities have a valid claim to the TPI stock, arguing that it is the Security Trustee, U.S. Bank, N.A. that has rights under the Stock Pledge Agreement. The Algonquin entities take the position that the Security Trustee merely administers the collateral, including the stock, for the benefit of the holder of the "B" Note," namely APIF.

The Debtors have also raised issues of bad faith in connection with the Algonquin entities' proposal to discontinue all pending litigation, including the District Court Litigation. It is the Debtor's position that the pending litigation will impact on whether APIF has an interest in the pledged stock and also on whether the Debtors' claims against the Algonquin entities are valid.

Conclusion

The decision to approve a disclosure statement is within the discretion of this Court. *In re El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 414 (Bankr. D. Puerto Rico 2006). The Court may disapprove disclosure statements that contain adequate information when it has concerns about whether or not the plans to which they relate can be confirmed at the particular stage of the case. *Id.* at 415; *see also In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (stating that "occasionally, it may be appropriate to disapprove of a disclosure statement, even

if it properly summarizes and provides adequate information about a proposed plan, when a court is convinced that the plan could not possibly be confirmed"); *In re Kehn Ranch, Inc.*, 41 B.R. 832, 833 (Bankr. D.S.D. 1984) (declining to proceed "with the time-consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable . . . ."). As noted by the Court in *Kehn Ranch*, "the [c]ourt's inherent powers and 11 U.S.C. § 105 enable[s] it to control its own docket." *Id.; see also Monroe Well*, 80 B.R. at 333 (stressing that such action "must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected").

After reviewing the opposition to the disclosure statements and after hearing oral argument by the various interested parties, the Court concludes that under the current circumstances as discussed above, the best course to follow is to postpone the hearing on the disclosure statements until some, if not all, the issues have been resolved, including the District Court Litigation, the HII Appeals, the appeal of this Court's October 2007 Decision, the pending motion submitted for decision by this Court concerning Algonquin's alleged superpriority administrative claim and any determination concerning Algonquin's rights under the Stock Pledge Agreement. The issues involve basically a two or arguably a three party dispute. A review of the claims register indicates that the only entities to have filed proofs of claim in these cases currently include the New York State Department of Taxation and Finance and the Security Trustee, U.S. Bank N.A. Without considering those claims or those of the Debtors or the Algonquin entities or administrative claims of professionals in the case, according to the Algonquin DS, the filed unsecured claim amounts and scheduled liquidated unsecured claims equal approximately $100,000 or less. Indeed, the Debtors have listed unsecured claims, exclusive of insiders, at

11

$28,429. The Court does not believe that there is any prejudice to delaying its determination on the disclosure statements. Accordingly, for control purposes only, the Court will adjourn the motions seeking approval of the disclosure statements to July 29, 2008, at 10:00 a.m. in Utica, New York.

    IT IS SO ORDERED.

Dated at Utica, New York

this 8th day of August 2008

                                          /s/   Hon. Stephen D. Gerling
                                          STEPHEN D. GERLING
                                          Chief U.S. Bankruptcy Judge