UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

FRANKLIN INDUSTRIAL COMPLEX, INC.                    CASE NO. 01-67459
                                                     Chapter 11
                    Debtor                           Jointly Administered
--------------------------------------------------------
IN RE:

CHRISTINE FALLS OF NEW YORK, INC.                    CASE NO. 01-67458

                    Debtor
--------------------------------------------------------
IN RE:

TRAFALGAR POWER, INC.                                CASE NO. 01-67457
                                                     (Main Case)
                    Debtor
--------------------------------------------------------
APPEARANCES:

HARRIS BEACH PLLC                                    LEE E. WOODARD, ESQ.
Attorneys for Debtors                                Of Counsel
One Park Place, 4th Floor
300 South Stat e Street
Syracuse, New York 13202

MENTER, RUDIN & TRIVELPIECE, P.C.                    JEFFREY A. DOVE, ESQ.
Attorneys for Algonquin Power Corporation, Inc.      Of Counsel
308 Maltbie Street, Suite 200
Syracuse, New York  13204-1498

AMY F. QUANDT, ESQ.
Trial Attorney, U.S. Trustee
10 Broad Street
Utica, New York 13501

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

2

# MEMORANDUM-DECISION AND ORDER

The Court considers herein the Motion for an Order Awarding and Approving Payment of Professional Fees Plus Expenses to the Bonadio Group ("Bonadio"), filed by Franklin Industrial Complex, Inc., Christine Falls of New York, Inc. and Trafalgar Power, Inc. (collectively, the "Debtors") on February 8, 2008. This is the fourth interim fee application the Debtors have filed on behalf of Bonadio ("Fourth Application"). The Fourth Application seeks a fee of $76,073.50 and expenses of $383.45, covering the period from October 15, 2007 through January 17, 2008. The Fourth Application also requests payment of fees in the sum of $20,420.00, which the Court held back on Bonadio's Second Interim Fee Application by an Order dated April 13, 2007.

The Motion came on for an initial hearing on February 26, 2008.[1] The Motion was then adjourned to March 25, 2008.[2] Two significant objections re-emerged with regard to the Fourth

---

[1] The Fourth Application first appeared on the Court's calendar on February 26, 2008. Following oral argument on that date, the Court, without finally ruling on the very issues that are being considered herein, awarded Bonadio one-half of the fees and expenses requested ($38,228.48) and directed that said fee be paid by the non-debtor, Marina Development, Inc. *See* Order, dated March 5, 2008.

[2] Bonadio was appointed to act as the Debtors' forensic accountant and business consultant by an Order, dated June 14, 2005. By an Order, dated August 10, 2007, the terms of the initial Order of appointment of Bonadio were modified primarily to provide for the payment/guarantee of Bonadio's fees and expenses by certain third parties. On December 3, 2007, the Debtors filed a motion seeking, *inter alia*, clarifications of the terms of the August 10th Order regarding the method of payment to Bonadio. That motion was opposed by Algonquin Power Corporation, Inc. and the Algonquin Power Income Fund ("APIF") (collectively the "Algonquin Entities") to the extent that the Debtors sought to pay Bonadio out of the so-called "HSBC Escrow Account" and Bonadio's alleged failure to comply with the "standard fee application process." That motion was apparently adjourned without date due to the pendency of a motion filed by APIF requesting a superpriority administrative claim pursuant to § 507(b) of the Bankruptcy Code (11 U.S.C. §§ 101-1532) ("Code"). However, the motion was subsequently restored to the Court's calendar on March 25, 2008 at the Debtors' request. *See* Letter from Wendy Kinsella, Esq., dated February 29, 2008.

3

Application, both of which are urged by the Algonquin Entities. The first objection argued by the Algonquin Entities is that the expert report authored by Bonadio on or about January 15, 2008 ("Report") is fatally flawed for a variety of reasons, as articulated in their objection, and will ultimately be adjudged as providing absolutely no benefit to the Debtors' estates in the pending litigation between the Debtors and the Algonquin Entities in the United States District Court for the Northern District of New York (the "District Court"). The second objection asserted by the Algonquin Entities is that any fee awarded to Bonadio cannot be paid from the so-called HSBC Escrow Account in which the Algonquin Entities claim a security interest.[3]

With regard to the first objection, the Algonquin Entities have urged the Court to review the Report in order to substantiate their contention that it utilized questionable methodologies in order to substantiate a claim against the Algonquin Entities of some $41 million in the litigation presently pending in the District Court. While the Court agreed to do so, it indicated that its review would be "fairly cursory" simply because the Court would not be reviewing the Report for evidentiary purposes, but rather would be attempting to determine its value to the Debtors' efforts to obtain a recovery in the District Court.

The Court has conducted its review, noting that Bonadio asserts some twenty-three different theories of liability in its report for which damages are recoverable from the Algonquin Entities and their various affiliates. While it does appear to this Court that some of these theories may overlap and others will be extremely difficult to explain to a jury or for that matter to a trial court sitting

---

[3] On October 30, 2007, this Court issued it's Memorandum-Decision, Findings of Fact, Conclusions of Law and Order ("Memo-Decision") in which it determined that the APIF did not have a valid security interest in the HSBC Escrow Account. That Memo-Decision is currently on appeal to the United States District Court for the Northern District of New York.

4

without a jury, this Court will not be the tribunal that will hear the expert testimony in the first instance.[4]

At the oral argument, the Algonquin Entities' counsel suggested that the Report failed to detail the actual dollar losses allegedly suffered by the Debtors. Yet, in reviewing the Report, the Court notes that it does, in fact, quantify the majority of damage claims in dollars and cents.

This Court need not and will not be drawn into a general analysis of the admissibility of the Report or the weight that may be given to it by the District Court at trial. From the perspective of qualification, the Court finds very little to quarrel over in regard to Thomas F. Bonadio's curriculum vitae. This Court need only find that the Report represents a potential benefit to the estate given the state of facts as they exist today. *See Matter of Environmental Waste Control,* 122 B.R. 341, 346 (Bankr. N.D. Ind. 1990). Clearly, there is a significant difference of opinion as to the benefit the Report of Bonadio will provide. It is doubtful that that benefit can be finally determined until the District Court litigation is resolved. Accordingly, this Court will not compensate Bonadio at this juncture in the full amount requested in the Fourth Application. *See In re Cerveceria Corona, Inc.*, 74 B.R. 313, 315 (D. Puerto Rico 1987), quoting 2 COLLIER ON BANKRUPTCY ¶ 331-9 (15th ed. 1986) for the premise that "[i]nterim allowances are always subject of the court's re-examination and adjustment during the course of the case as all expenses of administration must receive the court's final scrutiny and approval;" *see also In re Den-Col Cartage & Distribution, Inc.*, 20 B.R. 645, 647 (D.Colo. 1982) (indicating that "[i]nterim awards therefore are almost always subject to review and revision by the bankruptcy judge any time until final judgment is entered"). The Court

---

[4] The Court also assumes that Bonadio's theories and calculations of damages will undergo significant scrutiny when it is presumably deposed in advance of trial.

5

will, however, direct that Bonadio receive an additional $19,114.23, thereby approving 75% of the requested fees in the Fourth Application on an interim basis.[5]

Turning to the next issue implicated in the Fourth Application, that being the source of payment, the Court at the oral argument held on February 26, 2008, indicated its preference for prohibiting payment from the so-called "HSBC Escrow Account" in light of the pending appeal of the Court's October 30, 2007 Order, which found that the Algonquin Entities did not have a valid security interest in that Account. The Court believes that the law is clear that the filing of an appeal generally divests the bankruptcy court of jurisdiction. *See In re Winimo Realty Corp.*, 270 B.R. 99, 105 (S.D.N.Y. 2001). A distinction is made, however, between actions that seek to enforce or implement the order appealed from, as opposed to actions which expand or alter the order. The former are not prohibited in the absence of a stay, while the latter are beyond the jurisdiction of the trial court. *See In re the Board of Directors of Hopewell Intern. Ins. Ltd.,* 258 B.R. 580, 583(Bankr. S.D.N.Y. 2001). While it may be argued that invasion of the "Escrow Account" to pay the Debtors' professionals may not be an alteration or expansion of October 30, 2007 Order, the Court believes that the better course is for Bonadio to seek payment from an alternate source.[6]

Turning to the two other matters that were before the Court on March 25, 2008, the first being the Debtors' request that the Court consider directing final payment of the $20,420 to Bonadio

---

[5] The Court notes that both the Algonquin Entities and the U.S.Trustee asserted specific objections to certain entries in the Bonadio time records filed in support of the Fourth Application. Given the interim nature of this award, the Court will consider those objections to the extent they still exist at the time it makes its final award.

[6] In its Order of March 5, 2008, the Court directed that Bonadio's interim award could be paid by Marina Development Inc., as outlined in Debtors' motion papers. *See* Debtors' Motion For An Order Awarding And Approving Payment of Professional Fees Plus Expenses To The Bonadio Group From The HSBC Escrow Account.

6

that was ordered held back in the Court's Letter Decision and Order, dated April 13, 2007. For the same reasons indicated herein, the Court see no reason to disturb that holdback at this point.

Finally, the Court was asked to consider a motion filed by the Debtors on December 3, 2007 (Docket #308), which motion was to be heard on December 18, 2007, adjourned to January 29 2008, and finally adjourned to a date after the Court had ruled on the motion of APIF for a superpriority administrative expense pursuant to Code § 507(b). The December 3rd motion, in part, sought approval of a method of payment for Bonadio going forward. A review of the transcript of oral argument that occurred on March 25, 2008 indicated that the parties agreed on a final disposition of that portion of the December 3rd motion relating to future payments to Bonadio, and that an order would be submitted. A review of the Court's docket as of the date hereof indicates that such an Order was entered on April 9, 2008.

Based on the foregoing, it is

ORDERED that the Fourth Application of Bonadio shall be approved for payment on an interim basis in the amount of $57,342.71 pursuant to Code § 331,[7] and it is further

ORDERED that payment of this interim award shall not be made from the HSBC Escrow Account, notwithstanding this Court's Order of October 30, 2007, but may be made by Marina Development Inc. upon the same terms and conditions as set forth in the Court's Order of March 5, 2008, and it is finally

ORDERED, that the Court will not direct any further payment at this time of the amount held back in the Court's Letter Decision and Order, dated April 13, 2007.

---

[7] This amount includes the amount awarded pursuant to the Court's Order of March 5, 2008.

7

Dated at Utica, New York

this 5th day of August 2008

/s/ Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge