UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

IN RE:

FRANKLIN INDUSTRIAL COMPLEX, INC.            CASE NO.  01-67459
                                             Chapter 11
                      DEBTOR                   Jointly Administered
_____

IN RE:

CHRISTINE FALLS OF NEW YORK, INC.            CASE NO.  01-67458

                      DEBTOR
_____

IN RE:

TRAFALGAR POWER, INC.                        CASE NO.  01-67457
                                             (Main Case)
                      DEBTOR
_____

APPEARANCES:

HARRIS BEACH PLLC                            WENDY A. KINSELLA, ESQ.
Attorneys for Debtors                        Of Counsel
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202

MENTER, RUDIN & TRIVELPIECE, P.C.            JEFFREY A. DOVE, ESQ.
Attorneys for Algonquin Power Corporation, Inc.   Of Counsel
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1498

GREEN & SEIFTER, PLLC                        ROBERT K. WEILER, ESQ.
Attorneys for Ridgewood Heights, Inc.        Of Counsel
One Lincoln Center, Suite 900
110 West Fayette Street
Syracuse, New York 13202

Attorney for Hydro Investors, Inc.           DEVIN B. GARRAMONE
P.O. Box 321                                 Of Counsel
New Hartford, New York 13413

2

AMY F. QUANDT, ESQ.
Trial Attorney, U.S. Trustee
10 Broad Street
Utica, New York 13501

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

## LETTER DECISION AND ORDER

Before the Court is the motion of Harris Beach PLLC ("HB") for an order modifying the terms of appointment of HB as special litigation counsel to the above-referenced Debtors.[1]  The motion appeared on the Court's calendar at Utica, New York, on July 29, 2008.  It was opposed by Algonquin Power Corporation, Inc. and Algonquin Power Income Fund (collectively referred to as the "Algonquin Entities"), as well as Hydro Investors, Inc. ("HII").  Following oral argument the Court took the matter under advisement.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over this contested matter pursuant to 28 U.S.C. § 157 (b)(2)(A) and (O) and Federal Rule of Bankruptcy Procedure 9014.

## FACTUAL BACKGROUND

---

[1] Pursuant to an Order, dated September 7, 2001, the individual Chapter 11 cases referenced above were jointly administered, with Trafalgar Power, Inc. ultimately being designated as the main case.

HB was appointed to act as special counsel to the Debtors by an Order of the U.S. Bankruptcy Court for the Eastern District of North Carolina.[2]  HB's role as special counsel was to represent the Debtors in connection with claims being pursued against the Algonquin Entities as set forth in certain civil actions pending in the U.S. District Court for the Northern District of New York (99-CV-1238 and 99-CV-1246) ("District Court Litigation").   By an Order of this Court, dated July 25, 2003, HB's scope of employment as special counsel was expanded to include certain matters involving HII then pending in both the District Court and New York State Supreme Court.  Pursuant to an Order, dated March 21, 2005, HB was substituted as bankruptcy counsel for the Debtors. Finally on November 8, 2006, this Court entered an Order further expanding HB's scope of employment as special counsel and approving a contingency fee arrangement whereby Marina Development, Inc. ("Marina"), the sole shareholder of Trafalgar Power, Inc., agreed to pay HB a flat fee of $10,000 per month, commencing in May of 2006 and continuing until the District Court Litigation was concluded at the trial level.  Additionally, the November 8, 2006 Order granted HB a fee equal to 20% of any award obtained against the Algonquin Entities, inclusive of the $10,000 per month payments, capped at $5,000,000.  The November 8, 2006 Order also required HB to file monthly fee statements in support of the $10,000 payment.  In the absence of any objection, Marina would pay the monthly fee plus 100% of any expense reimbursement.  HB would not file an actual fee application until the conclusion of the District Court Litigation.  The November 8, 2006 Order made it clear that the $10,000 per month payments made by Marina would not rise to the level of an administrative expense, and they would not constitute so called "new value" for purposes of 11

---

[2]  The Debtors' cases were transferred to this Court by an Order of the U. S. Bankruptcy Court for the Eastern District of North Carolina, dated December 13, 2001.

4

U.S.C. § 1129(b).

The instant motion seeks yet another modification of HB's fee arrangement.  HB now

proposes that Marina will pay it the sum of $960,000 for services it has rendered in the District Court

Litigation through April 30, 2008.  Additionally, HB agrees to reduce its maximum fee, as provided

for in the November 8, 2006 Order, from 20% of any recovery capped at $5 million down to 5% of

any recovery capped at $1 million.  In doing so, HB notes that the requested modification will reduce

"the potential payment made from the Debtors' estates by $4 million and shift the burden for

payment of the non-contingent fees arising from the District Court Litigation, as defined in the

Amended Fee Agreement, from Debtors to Marina.  The Amended Fee Agreement is, therefore, a

substantial benefit to the Debtors." (See Motion of HB, dated July 8, 2008, at ¶ 16).  One other

significant change from the fee arrangement approved in the November 8, 2006 Order is the

requirement that HB file quarterly, rather than monthly statements, in support of its $10,000 monthly

fee.

The Algonquin Entities' opposition is centered primarily on what they perceive to be the

potential for a conflict of interest and division of loyalty emanating from HB's receipt of fees and

expense reimbursement from Marina almost exclusively.  The Algonquin Entities observe that

Marina is no longer a debtor before this Court and asserts that it is currently the alter ego of Arthur

Steckler, the president of the Debtors or his designee.[3]  The Algonquin Entities position that the

entire District Court Litigation is "being run  by Arthur Steckler and his personal lawyer (Jonathan

Chait) as if Arthur Steckler were the client but also that counsel (HB), the Debtors and the Debtors'

---

[3]  Marina was formerly one of the jointly administered Debtors; however, its Chapter 11  case
was dismissed pursuant to an Order of this Court, dated December 22, 2005.

5

principal don't even realize that there is anything wrong with that." (See Objection To Second

Motion Seeking Order Modifying the Terms of Engagement of Litigation Counsel to Debtors, dated

July 24, 2008 at ¶ 19).  The Algonquin Entities also observe that HB's request that it submit fee

statements quarterly, rather than monthly, and then receive 100% of the amount requested, all

without having to file a fee application, is contrary to local practice in this Court.

HII echoes to some extent the concerns of the Algonquin Entities, noting that under the

applicable Code of Professional Responsibility, an attorney cannot serve two masters (the Debtors

and Steckler).  Additionally, HII observes that if it is successful in its appeals of the orders of this

Court and the U.S. District Court, HB will be required to repay all of the fees previously paid to it.

In response to HII's assertions, the Debtors note that on the present record of this case, HII is not

even a creditor and is without any standing to object to their motion.

While the Algonquin Entities raise a significant concern for any bankruptcy court when they

allude to the potential for a conflict of interest and/or an issue of divided loyalty where the

compensation of a debtor's professional is furnished by a third party, HB suggests that their concern

is relatively recent in nature.  Citing to excerpts from other hearings involving fee requests and scope

of professional employment in this case, HB notes comments by counsel to the Algonquin Entities,

in which it is suggested that Algonquin would have no objection to Marina's payment of the fees of

Debtors' professionals, as opposed to those fees being paid out of property of the estate.  While such

comments may be inconsistent with the present posture of the Algonquin Entities, they hardly

constitute a waiver of what, in the final analysis,  is the responsibility of a bankruptcy court to insure

that conflicts of interest do not occur in the professional representation of debtors.

The Algonquin Entities assert that the entire District Court Litigation is being pursued solely

for the benefit of Steckler and that the ultimate resolution of that Litigation, whether by settlement or after trial, will be designed with protection of the equity position of Steckler being paramount. This course of conduct, suggests the Algonquin Entities, jeopardizes the interests of the Debtors' creditors, and, thus, HB is serving the inconsistent interests of two masters. As indicated, HII contends that HB's conduct actually violates the Code of Professional Responsibility.

HB notes, in response, that this Court, "previously analyzed the alleged conflicts of interest back in 2006 when Debtors brought a motion to modify the terms of Harris Beach's appointment." (See Supplemental Affidavit of Wendy Kinsella, Esq. in Support of Order Modifying the Terms of Appointment, dated July 28, 2008 at ¶ 17). It rejects the Algonquin Entities' reference to 11 U.S.C. § 328(a), asserting that the "improvident" standard is inapplicable here because HB is seeking modification of the fee structure during, rather than at the conclusion, of the representation. Finally, HB argues that the content of the monthly fee statements are frequently utilized by the Algonquin Entities to gain a tactical advantage in the District Court Litigation. Thus, filing of such statements on a quarterly basis will better protect the Debtors in that Litigation.

**DISCUSSION**

As this Court has observed previously in this case, the protestations of the Algonquin Entities must be viewed with somewhat of a jaundiced eye, given the fact that it is those very Entities who are currently engaged in extensive litigation with the Debtors both in the District Court and in this Court. Presumably the Algonquin Entities would like nothing better than to disrupt the Debtors' litigation posture by having this Court significantly limit or altogether deny compensation to their

7

counsel of choice. To a lesser extent HII has a similar motivation.

Having considered (once again) HB's request to further modify the terms of its appointment as Debtors' special litigation counsel and having considered (once again) the opposition of the Algonquin Entities and HII, this Court has two basic concerns with the instant motion. First, the Court is reluctant to approve compensation to HB in the sum of $960,000 for which there is absolutely no basis other than the explanation that it "represents a negotiated amount that satisfies all claims for services rendered by Harris Beach in the District Court Litigation (as defined in the Motion) through April 30, 2008." (See Supplemental Affidavit of Wendy Kinsella, Esq. in Support of Order Modifying the Terms of Appointment dated July 28, 2008 at ¶ 10). Regardless of the source of that compensation, this Court has an obligation to review its reasonableness, and it cannot do so in the absence of any documentation. *See Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989), citing *In re Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (stating that "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *In re Kelsey*, 272 B.R. 830, 834 (Bankr. D.Vt. 2002) (noting that "[t]he party applying for legal fees bears the burden of proving the reasonableness of the fees and, to sustain that burden, the party must present a carefully detailed application and supporting documentation"). Accordingly, the Court will require HB to provide the Court with some evidence of how the $960,000 was calculated.[4] If HB believes that in doing so it will necessarily reveal information that may be utilized by the Algonquin Entities to their advantage in the District Court Litigation, it may either redact that

---

[4] The Court will not dictate the form or content of the evidence to be provided. Obviously the most desirable evidence would be time records in the format provided for in the U.S. Trustee Fee Application Guidelines. If, however, such time records are not available, HB's billing records may well suffice.

8

information or submit the information intact in paper form for the Court's in camera review.

Second, the Court does not believe that HB should be relieved of the obligation, as set out in the November 8, 2006 Order, to submit monthly fee statements.  Such a practice insures that creditors, as well as the U.S. Trustee, can maintain a reasonable level of vigilance over professional fees accruing in the case.  Again, if HB believes that portions of the entries in those statements provide the Algonquin Entities with a tactical advantage, it may employ redaction or in camera review to shield those specific entries within reason.

IT IS SO ORDERED.

Dated at Utica, New York
this 27th day of October, 2008

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge